370 So.2d 970 (1979)
Thomas S. SCHMIDT et al.
v.
LADNER CONSTRUCTION COMPANY, INC., and Carriage Hills Development Co., Inc.
77-599.
Supreme Court of Alabama.
May 11, 1979.
Robert H. Smith of Collins, Galloway & Smith, Mobile, for appellants.
Robert L. Byrd, Jr. of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellee, Ladner Const. Co., Inc.
William M. Lyon, Jr. of McFadden, Riley & Parker, Mobile, for appellee, Carriage Hills Development Co., Inc.
*971 PER CURIAM.
This appeal is from an order of the circuit court granting Defendants' motion for judgment on the pleadings. We reverse and remand.
Plaintiffs brought a class action suit seeking a declaratory judgment and an injunction to prevent the operative effect of an amendment of a restrictive covenant. The developer of a subdivision in Mobile County, Carriage Hills Development Company, recorded certain restrictive covenants on February 20, 1976, covering Unit Five in Carriage Hills subdivision, which provide in pertinent part:
"3. No dwelling shall be permitted on any lot except lots 1-16, 58 and 59 if the ground floor area of the main structure, exclusive of 1 story open porches, carports and garages, shall be less than 1600 square feet for a 1 story dwelling, nor less than 900 square feet for a dwelling of more than 1 story. For Lots 1-16, 58 and 59, the ground floor area of the main structure, exclusive of 1 story open porches, carports and garages, shall be not less than 1400 square feet for a 1 story dwelling, and 750 for more than one story.
". . .
"13. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of 30 years from the date of the covenants, after which time said covenants shall be automatically extended for successive periods of 10 years unless an instrument, signed by a majority of the then owners of the lots, agreeing to change said covenants in whole or in part, has been recorded.
"14. Enforcement shall be by proceeding at law or in equity against any person or persons violating or attempting to violate any covenant, either to restrain violation or to recover damages.
". . .
"19. At any time, these covenants, restrictions and limitations may be changed or amended by a vote and agreement of the then owners of a majority of the lots in said subdivision, if Declarant consents and agrees to each such change or amendment in writing, such agreement and consent to be evidenced by a duly recorded instrument signed by a majority of such owners, and also by Declarant so long as it owns any of said lots, specifying each such change or amendment; or may be changed or amended by Declarant."
Plaintiffs allege: 1) They purchased their residential lots subsequent to the recordation of these restrictive covenants and in reliance thereon; 2) on December 30, 1977, the Declarant amended paragraph 3 of the restrictive covenants by lowering the building footage requirements for lots 1-16, 58 and 59;[1] and 3) after this amendment was recorded, Carriage Hills conveyed these lots to Ladner Construction Company.
Plaintiffs sought to enforce the restrictive covenants as originally recorded and to restrain Ladner Construction from building on these lots. The trial Court disagreed, granting Defendants'/Appellees' motion for judgment on the pleadings and dismissing Plaintiffs' complaint with prejudice. Plaintiffs contend (here, as below) that the last phrase (" . . .; or may be changed or amended by Declarant.") of paragraph 19 is ambiguous and meaningless; and, therefore, it is null and void. Accordingly, Plaintiffs assert Carriage Hills was without legal authority to unilaterally amend paragraph 3 and lower the original footage limitations.
The dissent, finding no ambiguity, concludes that paragraph 19 "contemplates two methods of amending the covenants. One method is by amendments initiated by owners of a majority of lots in the subdivision, and the other is by the unilateral action of Carriage Hills."
Respectfully, we believe this is an overly simplistic view. Our analysis of the entirety of the two documents convinces us that the questioned phrase "or may be changed or amended by Declarant" is far too equivocal and uncertain to permit its utilization to the detriment of the Plaintiffs.
*972 Before we proceed with this analysis, however, we deem it appropriate to state briefly what is not presented or addressed on this appeal. The broader question of the legal right of a declarant to modify restrictive covenants running with the land, if such right is clearly preserved in the original document, is not the issue here presented. The Appellants in the instant appeal are not proceeding, in the case as presently postured, on any theory of misrepresentation or estoppel; nor are they claiming that the questioned phrase operates as an oxymoronic (self-contradictory) elimination of the purported modification. Indeed, our preliminary research (prompted by an earlier misunderstanding of this self-contradictory contention[2]) shows that this broader question is in a state of considerable confusion and far from settled where purchasers have acted in reliance upon the original restrictions.[3] Nothing herein should be construed as an expression of an opinion upon any issue beyond the narrow question of ambiguity here presented.
We turn now to an analysis of the questioned phrase. The issue restated is: Do the words "or may be changed or amended by Declarant" preserve to the Declarant the unilateral right to modify (lower) the building restrictions set forth in the original covenant? Appellants present a two-pronged ambiguity argument: First, the phrase is grammatically incomplete and deficient, having no subject and predicate; second, it is unclear what subject was intended by implication. We reject the former and accept the latter of these contentions.
We commend the Appellants for their scholarly dissertation on the necessity and propriety of grammatical style and structure in the drafting of legal documents. Surely, as they suggest, those who draft legal instruments should do so with the knowledge and skill of an artist, for indeed the use of the English language to express a common consent in writing, the breach of which is legally enforceable, is an art. But it is not an exact science, and the law will not void a written agreement merely on grounds of technical or grammatical deficiencies.[4]
The test is a more practical one and is so well known as to require no citation of precedent: A written agreement is unambiguous and will be enforced (if otherwise enforceable) where the intent of the parties can be fairly and reasonably gleaned from the four corners of the document.
What, then, is the subject of the phrase, "or may be changed or amended by Declarant"? The dissent says it can only be "these covenants, restrictions and limitations." We agree this is a possibility; but we think it is only one of at least two possible interpretations.
Our holding of ambiguity is dramatized, and perhaps best explained, by the Declarant's own interpretation of this clause as expressed in the Preamble to the proposed amendment,[5] which reads:
"WHEREAS, in said instrument establishing said restrictive covenants and as a part thereof, the undersigned as such Declarant did reserve unto itself the right to change or amend said restrictive covenants so long as it continued to own any lots in said subdivision; and
*973 "WHEREAS, Declarant, which continues to own various lots in said subdivision, is now desirous of amending said restrictive covenants as hereinafter provided;" (Emphasis theirs.)
It is also interesting to note that Appellees, in their brief, fall into the same error:
". . . Rather, their position [Ladner and Carriage Hills] is that the language at issue is clear and unambiguous, evidencing a positive reservation of the right by Carriage Hills to change or amend the restrictions at any time during the pendency thereof as long as it owns any lot in the subdivision." (Emphasis added.)
In point of fact, the questioned portion of paragraph 19"or may be changed or amended by Declarant"does not condition Declarant's right to change or amend upon its ownership of any lots. If these references in the preamble and Appellees' brief were drawn from the wording in paragraph 19 "and also by Declarant so long as it owns any of said lots", then the confusion is compounded. From any fair and comprehensive reading of the entire paragraph 19, it is clear that this latter phrase is tied to the signing of a "duly recorded instrument. . . by a majority of such owners, and also by Declarant." Clearly, that phrase is not intended to unilaterally authorize Declarant to amend the restrictions. Furthermore, when taken literally, this contention quoted from Appellees' brief effectively acknowledges that the Declarant's authority to unilaterally amend the restrictive terms of the original covenant does not find its source in the last phrase of paragraph 19.
We suggest this error is a natural one grounded in the confusing language of the entire paragraph. Indeed, the only portion of paragraph 19 that is clear is the first full clause ending with the word "subdivision". From this point forward, one is led to believe initially that Declarant must agree with a majority of lot owners to any change whether or not it owns any lots; then, when the recording condition is specified, the language contains the further condition that Declarant must be a lot owner. And, finally, Declarant's unilateral right to change is totally unconditioned.
All of this leads us to believe it is reasonably probable that the phrase following the semicolon, though vague and incomplete in its detail, was intended to refer to Declarant's right to further change or amend the majority's proposed change or amendment, which is the subject of the entire paragraph. Moreover, such an interpretation is consistent with the lack of any devious purpose on the part of Declarant in the drafting and recording of the original restrictive covenants.
At any rate, the language of paragraph 19, when read together with the two documents as a whole, does not preserve to the Declarant, in clear unambiguous terms, a right to change or modify the restrictions contained in the original covenant.
It is axiomatic that an ambiguity in a restrictive covenant, as in contracts generally, is to be construed against the drafter. Vaughn v. Fuller, 278 Ala. 25, 175 So.2d 103 (1965). The judgment of dismissal is reversed, and this cause is remanded for final disposition consistent with this opinion.
REVERSED AND REMANDED.
BLOODWORTH, FAULKNER, JONES, and ALMON, JJ., concur.
SHORES, J., concurs in the result.
TORBERT, C. J., and MADDOX, EMBRY and BEATTY, JJ., dissent.
TORBERT, Chief Justice (dissenting):
I respectfully dissent.
Although paragraph 19 is inartfully drafted, it appears that it contemplates two methods of amending the covenants. One method is by amendments initiated by owners of a majority of lots in the subdivision, and the other is by the unilateral action of Carriage Hills. Accordingly, paragraph 19 is sufficiently clear to effectuate Carriage Hills' reservation of the right to amend the restrictive covenants, and the subsequent amendment is effective as against other grantees in the same subdivision. This *974 Court has recognized that restrictions on the use of land are not favored in the law, but, where restrictive covenants do exist and where they express the intent of the parties, they will be enforced. Laney v. Early, 292 Ala. 227, 292 So.2d 103 (1974). Furthermore, all provisions of a written instrument must, if possible, be given effect. See Ashley v. Cathcart, 159 Ala. 474, 49 So. 75 (1909).
A motion for judgment on the pleadings is proper where the pleadings are closed and the material facts are not in dispute. ARCP 12(c). The material facts, as reflected in the pleadings, are that Carriage Hills amended a restrictive covenant pursuant to its reserved power under paragraph 19. Because I am of the opinion that paragraph 19 is not ambiguous, I would hold the amendment is effective and the Rule 12(c) motion was properly granted.
MADDOX, EMBRY and BEATTY, JJ., concur.
NOTES
[1] The ground floor area for a one-story dwelling was reduced from 1400 to 1200 square feet.
[2] Appellants use this argument merely to support their contention that the intended subject of the questioned phrase cannot be supplied by clear implication, as contended by Appellees, in view of earlier clear language to a contrary result.
[3] See Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451 (1973).
[4] The modern art of "creative" writing, used almost universally in the world of printed advertising, makes broad use of the incomplete sentence technique. Witness the following example from the current issue of a popular magazine: "The diamond solitaire. A rare gift. A 11/8 karat diamond. Set simply and elegantly." While this last phrase is an incomplete sentence, one is not left to speculate on what is "Set simply and elegantly." The implied subject diamondis clear and unmistakable.
[5] This is the proposed amendment to the original restrictive covenants.