This appeal is from the Lee County Circuit Court's order enjoining appellants, Norma and Theodore Day, from failing to remove their home from Westwood Subdivision.
The facts of this case are as follows:
Westwood Subdivision is located in Lee County, Alabama. It was developed by West Phenix Land Company, Inc. (West Phenix). The plot thereof, together with restrictive covenants, was filed in the Office of the Judge of Probate of Lee County in May 1976.
Prior to the placing of the home in Westwood that is the subject of this action, all houses in the subdivision were "conventional stick-built" structures on slab foundations.
On or about April 21, 1982, appellant Frander and Frander, Inc., with the knowledge and consent of West Phenix and Norma and Theodore Day (also appellants), began assembling a premanufactured home on the Days' lot in Westwood. The home was ready for occupancy within two weeks. However, on or about May 6, 1982, the residents of Westwood filed a complaint seeking declaratory and injunctive relief, or, in the alternative, damages against Frander and Frander, Inc., and West Phenix.
Two of the Westwood residents claimed that each had purchased a house and lot in the subdivision in reliance upon their realtor's representations that West Phenix would not permit the construction of anything other than conventional stick-built houses therein. The developer, Howard Jefferson, did not remember making such statements. On the contrary, Kenneth Funderburk, a partner of Jefferson's in West Phenix, testified that he and engineer Harry Ennis drafted the restrictive covenants in question, and that he was careful in what was said and not said in the covenants concerning modular homes like the Days'.
At the conclusion of the trial, during which extensive testimony was presented, the trial court concluded that the structure erected by the Days violated the restrictive covenants of Westwood Subdivision, and ordered the Days to remove the home within ninety days, with Frander and Frander's assistance. After the trial court denied their motion for a new trial, the Days and Frander and Frander, Inc. filed this appeal.
The two issues presented for our review are:
(1) Whether First Federal Savings and Loan Association of Russell County (First Federal), the holder of a mortgage on the Days' home and lot in Westwood Subdivision, was an indispensable party to the action, and
(2) Whether the structure erected by the Days violates the restrictive covenants of Westwood Subdivision, and, in particular, the covenant which reads:
 No structure of a temporary character, trailer, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently.
After reviewing the record, we are of the opinion that the judgment is not supported by the evidence; therefore, that judgment is due to be reversed.
 I
Appellants contend that the failure of the Westwood residents to add mortgagee *Page 377 
First Federal renders the trial court's order void, because First Federal is a proper, necessary, and indispensable party to this action. Appellees respond that the mortgagee may be labeled a proper or necessary party, but that appellants have failed to show that it is an indispensable party. We agree with the appellees.
In his treatise Alabama Practice, Rules of Civil Procedure
(1973), Champ Lyons addresses the difference between necessary parties and indispensable parties:
 "Indispensable parties" are persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. Bennie v. Pastor, C.A.N.M. 1968, 393 F.2d 1 [10th Cir. 1968].
. . . .
 "Necessary parties" are those affected by the judgment and against which in fact it will operate. West Coast Exploration Co. v. McKay, 1954, 93 U.S.App.D.C. 307, 213 F.2d 582, certiorari denied, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123.
1 Lyons, Alabama Practice, at 389.
We are unable to see how First Federal could be called an indispensable party in this instance. Even though not a party to the action, First Federal's interests have been protected by the mortgagors, Norma and Theodore Day, since they are seeking the same result as First Federal. This would not make First Federal an indispensable party, but rather, at most, a necessary party, and thus an equitable judgment could be entered affecting First Federal. If, however, First Federal decides that its interests have not been adequately represented by the Days, it has the option of asserting any claims it may have in an independent action. See McClenney Son v. Reimer,435 So.2d 50 (Ala. 1983). This being the case, we reject appellants' contention that the order is void for failure to join an indispensable party, and proceed to a discussion of the main issue for our review on appeal.
 II
At the outset, we wish to point out that restrictive covenants are not favorites of the law, and will be construed strictly by this Court. In Hines v. Heisler, 439 So.2d 4 (Ala. 1983), we stated:
 We are not unmindful of the well settled rule that in construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property.
439 So.2d at 5. Therefore, any doubt should be resolved in favor of allowing the Days to keep their home in Westwood Subdivision.
Although the trial court made no specific findings of fact, it apparently based its order on a violation of restrictive covenant "8. Temporary Structures." More specifically, the court must have found that the Days' home was either a "structure of a temporary character," or a "trailer."
The facts of this case, however, indicate that the Days' home was not only in compliance with all of the covenants concerning Westwood Subdivision, but Federal housing standards as well. Griffen's attorney stipulated that the house met the cost and size requirements of the covenants, thus leaving only the quality of materials and workmanship to be challenged.
The home meets requirements of the Federal Housing Administration (F.H.A.), and its walls are made up of two-by-fours, rather than the two-by-twos which are usually found in houses of lesser quality. The roofing is supported by roof rafters meeting requirements of the Department of Housing and Urban Development (H.U.D.). The exterior walls and flooring have insulation factors in excess of the Federally established minimum. The home was not designed to rest upon wheels and axles, but rather was anchored to the ground by "minute-man" anchors meeting requirements of the Veterans Administration (V.A.), and F.H.A. Howard Pennington, a home builder for over fifty years, testified *Page 378 
that the quality of workmanship and materials in the Days' home was the same as, if not better than, any conventional slab-built home he had seen. He testified that the Days' pre-manufactured home was well constructed, well insulated, and was equal in value to pier-built homes.
The testimony at trial also showed that the pre-manufactured home was aesthetically in line with the other homes in the subdivision, and, having viewed the pictures of the houses in the subdivision, we agree with this conclusion. Kenneth Funderburk, one of the draftsmen of the restrictive covenants, personally inspected the Days' home and its specifications, and testified that he could find no reason not to allow the Days' home in Westwood Subdivision.
Funderburk's testimony is important for another reason. Where the language of the covenants is found to be ambiguous, the intent of the developer is to be given great weight by the court in discerning whether the home should be allowed to remain in the subdivision. Funderburk testified that he drafted the restrictive covenants with homes like the Days' in mind, and was careful what was said and not said in the covenants. This is evidenced by the use of the word "placed" in the covenants. In the cases cited by appellees for support, the covenants state that no building shall be "erected" on a lot, whereas here the Westwood restrictive covenants read: ". . . no building shall be `erected or placed' on a lot. . . ." This phrase "or placed" indicates that Funderburk was contemplating allowing pre-manufactured homes in Westwood Subdivision, as those are the houses that are "placed," rather than "erected."
The type of financing also discredits appellees' contention that the pre-manufactured home is either a "structure of a temporary character" or a "trailer." First Federal inspected the home and agreed to grant a 30-year loan under the Alabama Housing Finance Authority Bond Program. The Days bought the house from Frander and Frander, Inc., and the lot from West Phenix, and at the same time executed the mortgage to First Federal. The mortgage form used by First Federal is commonly known as a "Fannie Mae 1 to 4," and is the type used by savings and loan associations to finance homes, because the one document secures the land, building, and fixtures. The Alabama Housing Finance Authority must have concluded that the premanufactured home was of good quality and permanent, or else it would not have approved a 30-year mortgage on the home.
In an attempt to contradict appellants' evidence, appellees offer the testimony of some Westwood residents and two realtors that the home is temporary because it can be moved. Appellants refute this testimony by showing that it would be no easier to move the Days' home once it was anchored than it would be to move most conventional stick-built homes. In addition, Joseph Frander, of Frander and Frander, Inc., testified that the Days' home is, as are all homes of this type, under a warranty which covers materials, labor, and any defects in materials or labor, for a period of one year and ten days. Frander also testified that this warranty automatically terminates if the home is relocated after being permanently placed on the lot.
By showing that this house is a permanent, well-built structure, and therefore not temporary, appellants have necessarily shown that it is also not a trailer. By definition, a trailer is something designed to be moved, and moved rather easily, and the evidence overwhelmingly shows that the Days' home was not designed to be moved once placed on the lot. In fact, the evidence adduced at trial shows that the method to use to move the Days' home now would be identical to that used in moving conventional-type homes.
After reviewing the evidence before the trial court, we cannot see how the Days' home could be classified as either a "structure of a temporary character" or as a "trailer." Therefore, for all of the above-stated reasons, the judgment of the trial court is reversed, and the cause remanded *Page 379 
to the trial court for an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.