G. Randall Smith, Jr., and Julia Smith appeal from a judgment entered by the trial court denying declaratory and injunctive relief in an action by the Smiths to enforce a restrictive covenant against James Ledbetter and Cherie Ledbetter. We affirm.
The Smiths and the Ledbetters own lots in a subdivision in Gadsden called "the Highlands." The Highlands subdivision was created pursuant to a plan of development in which certain restrictive covenants limit the use of the various plots of land in the subdivision. On January 13, 2006, the Smiths filed a complaint against the Ledbetters in the trial court seeking a judgment declaring that the Ledbetters were in violation of one of the restrictive covenants and an injunction barring further construction of the Ledbetters' house. The trial court heard oral argument regarding the Smiths' claims on February 10, 2006.
On February 22, 2006, the Smiths filed an amended complaint seeking monetary damages for violation of the restrictive *Page 143 
covenant. The Smiths also filed on the same day a motion for a summary judgment against the Ledbetters. The Ledbetters filed a document with the trial court on April 25, 2006, entitled "Argument in Support of . . . Defendants' Position," in which they denied any violation of the restrictive covenant.
Also on April 25, 2006, the trial court entered a judgment finding that the Ledbetters were not in violation of the restrictive covenant and denying all of the Smiths' requested relief. The Smiths timely appealed to our supreme court. That court then transferred the case to this court, pursuant to §12-2-7(6), Ala. Code 1975.
The relevant facts are as follows. The Highlands subdivision was developed by Nancy Becker, who divided an area of land into 32 lots for individual sale. In 1994, the Smiths purchased lot 25, as it is numbered in the subdivision plat created by Becker. The Smiths constructed a house on lot 25 in 1995.
In 2005, the Ledbetters purchased lot 24; lot 24 is adjacent to and to the west of the Smiths' lot. The deed to lot 24 contains a provision stating that the property was subject to certain restrictive covenants and referencing those covenants.
Of the various restrictive covenants applicable to the lots in the Highlands subdivision, only one is relevant to this matter. That restrictive covenant states: "Every residence shall face the street on which the lot fronts." Nowhere in the applicable deeds or in the document containing the restrictive covenants is the term "fronts" defined.
Lot 24 and lot 25 abut the northern boundary of the Highlands subdivision. The southern boundary lines of the parties' lots border Audrey Lane, a street that runs west to east, separating plots on the northern and the southern sections of the subdivision. The Smiths' lot, like most of the lots in the Highlands subdivision, has only one side of the lot that borders a street. However, lot 24 has a southern boundary that stretches approximately 75 feet along Audrey lane; the northern boundary of lot 24 extends for approximately 210 feet, of which approximately 155 feet borders Viola Drive.
In late 2005, the Ledbetters began construction on a house on lot 24. It was apparent to the Smiths and to other residents of the neighborhood that the Ledbetters were building their house to face Viola Drive to the north and not Audrey Lane to the south. All but one of the houses built on property that bordered Audrey Lane were built to face Audrey Lane. Only lot 8, which is a corner lot, has a house that faces another street, although apparently the side and not the back of that house faces Audrey Lane. The Smiths brought this action because they claim that construction of the Ledbetters' house to face away from Audrey Lane violates the restrictive covenant.
In support of their motion for a summary judgment, the Smiths submitted several affidavits and other exhibits. First, the Smiths submitted the affidavit of Nancy Becker, the developer of the subdivision, in which Becker states:
 "It was my intent to develop the property with restrictions in accordance with a common plan designed to preserve the value and qualities of the land for the benefit of its future owners. In order to accomplish this goal, The Covenants, Conditions and Restrictions for the Highlands Subdivision were drafted personally by me.
 "I am familiar with Section I.B.3. of the Covenants, Conditions and Restrictions which specifically states: `Every residence shall face the street on which *Page 144 
the lot fronts.' It was my intent and understanding that the street on which Lot 24 fronts is Audrey Lane. All other residences in the subdivision bordering Audrey Lane are built so that those residences front Audrey Lane."
The Smiths also submitted the affidavit of Bennett Tucker, who was the engineer hired to assist Becker in the design of the subdivision. Tucker states in his affidavit:
 "I am familiar with lot twenty-four of the Highlands Subdivision, which is currently owned by the Ledbetters. When the Highlands Subdivision was designed in the 1990s it was the design and intent for any residential home built on lot twenty-four to face Audrey Lane. Further, a residence constructed on lot twenty-four with the rear of the home facing Audrey Lane would not be consistent with the general design and scheme of the neighborhood where no other home found in the subdivision has the rear of the home facing Audrey Lane."
G. Randall Smith, Jr., submitted his own affidavit in which he set forth some of the facts as mentioned above and also stated that, in his opinion, the construction of the Ledbetters' house to face away from Audrey Lane would cause a reduction in the value of the Smiths' house from $300,000 to $175,000. Additionally, the Smiths submitted the affidavit of Taylor Wiggins, who is the president of the Highlands Homeowners' Association ("the Association"). In his affidavit, Wiggins states that, beginning in December 2005 and on several occasions thereafter, he expressed concern to the Ledbetters that the orientation of their house was in violation of the restrictive covenants on the property. Additionally, Wiggins states that he invited the Ledbetters to a December 20, 2005, meeting of the Association to discuss the problem but that the Ledbetters did not attend. Wiggins states that, after the meeting, on December 22, 2005, he engaged the secretary of the Association to send a letter to the Ledbetters stating the Association's concerns regarding the Ledbetters' house construction. Wiggins further stated in the affidavit that, in his opinion, the Ledbetters would be in violation of the restrictive covenant if they constructed their house to face Viola Drive and not Audrey Lane and that such construction would disrupt the pattern of the neighborhood.
On appeal, the Smiths claim that the trial court erred in holding that the Ledbetters are not in violation of the restrictive covenant.
 "`[W]here a trial court does not receive evidence ore tenus, but instead makes its judgment based on the pleadings, exhibits, and briefs, the ore tenus standard's presumption of correctness does not apply to the trial court's factual findings and it is the duty of the appellate court to judge the evidence de novo.' "Ex parte Horn, 718 So.2d 694, 705 (Ala. 1998). This court reviews questions of law de novo."
Hale v. Hale, 878 So.2d 313, 319 (Ala.Civ.App. 2003).
As our supreme court has stated:
 "[I]n construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear and the restrictions are confined to a lawful purpose within reasonable bounds. . . ."
Hines v. Heisler, 439 So.2d 4, 5 (Ala. 1983).
Both sets of parties claim that the language of the restrictive covenant at issue is clear and unambiguous. However, each side offers a different interpretation of the language of the restrictive covenant. *Page 145 
The Smiths claim that the unambiguous language of the restrictive covenant requires the Ledbetters' house to be built facing Audrey Lane. The Ledbetters claim that because their lot "fronts" two streets, the restriction gives them the choice as to which street their house should face.
In written instruments, two types of ambiguities can arise: a patent ambiguity and a latent ambiguity. McCollum v.Atkins, 912 So.2d 1146, 1148 (Ala.Civ.App. 2005). A patent ambiguity results when a document, on its face, contains unclear or unintelligible language or language that suggests multiple meanings. Thomas v. Principal Fin. Group,566 So.2d 735, 739 (Ala. 1990). On the other hand, "[a]n ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." Id.
It is apparent that the restrictive covenant in this case does not contain a patent ambiguity. On its face, the statement "[e]very residence shall face the street on which the lot fronts" contains no unintelligible language and is not susceptible to multiple interpretations. However, a latent ambiguity is revealed by application of the restrictive covenant given the fact that the Ledbetters' lot borders two streets.
As previously mentioned, the term "fronts" is not defined in the applicable deeds or the document containing the restrictive covenants, and there is no indication that a special or technical use of the word is intended. "Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning." Homes of Legend, Inc. v.McCollough, 776 So.2d 741, 746 (Ala. 2000).Merriam-Webster's Collegiate Dictionary 503 (11th ed.2003) defines the verb "front" as "to have the front or principal side adjacent to something; also: to have frontage on something." Looking at the language of the restrictive covenant, it is evident that the second half of this definition was intended. The restrictive covenant requires a residence to face the street on which the lot fronts. Neither the language of the applicable deeds or of the restrictive covenant indicates that the lot in question has a "front or principal side." Therefore, the word "fronts" must be read as having the definition "to have frontage on something."
Black's Law Dictionary 692 (8th ed.2004) defines "frontage" as "[t]he part of land abutting a street or highway or lying between a building's front and a street or highway." Here again, because the property had no building on it when it was conveyed to the Ledbetters, the only applicable definition of "frontage" would be "[t]he part of land abutting a street or highway." Therefore, applying this definition to the restrictive covenant, it must be read as requiring every residence to face the part of the land abutting a street. However, read in this light, the Ledbetters' property "fronts" two streets, namely Viola Drive and Audrey Lane. This fact is problematic since the restrictive covenant states that the residence must face "the" street on which the lot fronts. "The" as used here is a word of limitation, indicating that, for the lot, there is a single and particular street on which the lot is considered to "front." The restrictive covenant, however, does not provide any indication as to which is the street upon which a house must front if it is bounded by streets on two or more sides.
The restrictive covenant is, therefore, susceptible to multiple interpretations as to which direction a residence should face on a lot such as the Ledbetters' lot. Accordingly, *Page 146 
we conclude that the restrictive covenant is ambiguous as applied to any lot, such as the Ledbetters' lot, that fronts more than one street.
This court has stated, "`[o]nly if the intent of the covenant is clear and unambiguous will it be given effect.'" Grey stoneRidge Homeowners' Ass'n, Inc. v. Shelton, 723 So.2d 88, 89
(Ala.Civ.App. 1998) (quoting Johnson v. Bryant,350 So.2d 433, 437 (Ala. 1977)). Further, "[w]here the language is ambiguous, `its construction will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against [the party seeking enforcement].'" Id. at 90 (quoting Bear v.Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 484 (1948)).See also Smith v. Hines, 429 So.2d 1016 (Ala. 1983); andSchmidt v. Ladner Constr. Co., 370 So.2d 970
(Ala. 1979) (plurality opinion).
In Smith v. Hines, supra, various property owners sued a homeowner, Hines, alleging that Hines had violated a restrictive covenant that stated that "`[n]o building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling of not less than 1,100 square feet and a private garage for not more than two cars.'"Smith v. Hines, 429 So.2d at 1016. Hines built a house without a garage, which the other homeowners claimed violated the restrictive covenant. The trial court held that Hines had not violated the restrictive covenant, and the supreme court affirmed. The supreme court found that the restrictive covenant was ambiguous as to whether a garage must be built with a house or whether a garage if built simply must be built for no more than two cars. Id. at 1017. The supreme court held that, because the restrictive covenant did "not, in clear, unambiguous terms, mandate that each house constructed . . . include a garage. . . ., garages are optional." Smith v. Hines, 429 So.2d at 1017.
Similarly, this court has held that when a restrictive covenant was "subject to interpretation," such a restrictive covenant could not be enforced against a property owner. Roegner v.Vinson, 723 So.2d 694, 696 (Ala.Civ.App. 1998). InRoegner v. Vinson, supra, the property owner, Roegner, moved a recreational vehicle ("RV") and a bathhouse onto a lot he had purchased in order to oversee renovation of a cabin on the lot. Neighboring landowners sued Roegner, claiming that he had violated various restrictive covenants contained in his deed. Among other things, those restrictive covenants stated: `"No outside toilets or privies shall be constructed or maintained on any lot in the property'" and "`No tents, trailers, mobile homes or temporary type structures of any kind may be erected or placed on any lot, whether temporarily or permanently.'" Id. at 695. The trial court held that Roegner had violated both restrictive covenants and that his RV and bathhouse should both be permanently removed from the lot.
This court reversed, however. Although this court noted that Roegner's use of the RV as a temporary dwelling violated the restriction against temporary structures, the court found error with the trial court's order to remove the RV from the property completely. This court noted that both restrictive covenants were "subject to interpretation" and that, regarding the RV, there is "a difference between erecting and/orplacing an RV on a lot for dwelling purposes and in merely parking an RV on a lot." Id. at 696. In holding that parking an RV on the lot was not prohibited by the restrictive covenants, this court noted that, "if the grantor had intended to prohibit the parking of RVs . . . on the lot, it would have been easy for the grantor to word the restriction in clear and unambiguous language." *Page 147 Id. See also Greystone Ridge Homeowners' Ass'n, Inc. v.Shelton, 723 So.2d at 89-90 (holding that a restrictive covenant prohibiting modification of "`the exterior of any Buildings or the landscaping, grounds or other Improvements . . . unless such . . . alteration is first approved, in writing, by Developer'" was "too ambiguous, as well as too broad, for this court to hold" that a landowner could not install a weather vane without prior approval from the developer); and Schmidt v.Ladner Constr. Co., 370 So.2d at 973 (plurality opinion) (stating that provisions in restrictive covenants allowing for modification of such covenants were ambiguous and, therefore, could not be enforced).
Therefore, because the restrictive covenant referenced in the Ledbetters' deed is ambiguous, it must be interpreted against those seeking enforcement of it and in favor of the Ledbetters. The Smiths claim that, if the language of the restrictive covenant is ambiguous, the intent of the developer, Becker, and the engineer, Tucker, that any house built on lot 24 should face Audrey Lane is controlling. In support of this proposition, the Smiths cite, among other cases, Frander Frander, Inc.v. Griffen, 457 So.2d 375, 378 (Ala. 1984).
In Frander Frander, Inc. v. Griffen, supra, the supreme court reversed a trial court's judgment finding that property owners, the Days, had violated, by putting a premanufactured house on their lot, a restrictive covenant in their deed that stated: "`No structure of a temporary character, trailer, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently.'" Frander Frander, Inc. v. Griffen,457 So.2d at 376. Although the supreme court did not actually find the restrictive covenant to be ambiguous, the court stated that "[w]here the language of the covenants is found to be ambiguous, the intent of the developer is to be given great weight by the court in discerning whether the home should be allowed to remain. . . ." Frander Frander, Inc. v.Griffen, 457 So.2d at 378. The supreme court then examined the testimony of Kenneth Funderburk, the developer of the Days' subdivision and the drafter of the restrictive covenant. Funderburk had testified at trial that he drafted the covenant with premanufactured houses like the Days' "in mind" and that he had actually seen the Days' house and did not think it violated the restrictive covenant. Id. at 378. Based on this and other evidence, the supreme court held that the Days had not violated the restrictive covenant. Frander Frander,Inc. v. Griffen, 457 So.2d at 378.
Additionally, in Cooper v. Powell, 659 So.2d 93
(Ala. 1995), the supreme court reversed a trial court's judgment that found that a landowner, by placing two mobile homes on his lot, had violated a restrictive covenant that stated "`[T]he lots or parcels initially subdivided and sold may not be further subdivided into smaller lots or parcels.'" Cooper v.Powell, 659 So.2d at 94. Another provision of the covenant stated: "`Mobile homes shall be allowed on lots or parcels only in the half of the property of greatest distance from the property's primary road frontage.'" Id. The supreme court found that the second provision, which uses the plural "mobile homes," indicated that multiple mobile homes were permissible on the lots. The court also cited language fromFrander Frander, Inc. v. Griffen, supra, providing that "`[w]here the language of the covenant is found to be ambiguous, the intent of the developer is to be given great weight by the court. . . .'" Id. at 95 (quoting *Page 148 Frander Frander, Inc. v. Griffen,457 So.2d at 378). The court then noted:
 "Brian Nelson, the developer and author of the restrictions, testified that his intent in drafting the subdivision restriction was to restrict further subdivision and resale of the lots and not to restrict the use of a lot to one single-family dwelling. Further testimony by Nelson revealed, as to another lot he had sold in the general area, subject to substantially the same restrictions, two families were living on the lot in separate dwellings."
Id. On the basis of this testimony and other evidence presented in the case, the supreme court held that Cooper, the landowner, had not violated the restrictive covenant and reversed the trial court's judgment. Id.
In both Frander Frander, Inc. v. Griffen, supra, and Cooper v. Powell, supra, the supreme court used the developer's testimony to support its decision to limit
application of the restrictive covenants in favor of the landowner. See Frander Frander, Inc. v. Griffen,457 So.2d at 378; Cooper v. Powell, 659 So.2d at 95. Use of such evidence to limit application of a restrictive covenant comports with the traditional rule applied in such cases that ambiguous restrictive covenants should be construed in favor of the landowner. Indeed, both Frander Frander and Cooper cite some form of this traditional rule. In Frander Frander, supra, the supreme court states that "`in construing restrictive covenants, all doubts must be resolved against the restriction. . . .'"Frander Frander, Inc. v. Griffen,457 So.2d at 377 (quoting Hines v. Heisler, 439 So.2d at 5). Also, in Cooper v. Powell, the court states that "[w]here the language in a restrictive covenant is clear and unambiguous, it will be given its manifest meaning, but its construction will not be extended by implication to include anything not plainly prohibited." Cooper v. Powell, 659 So.2d at 95. The Smiths, however, are asking this court to use Becker's and Tucker's affidavits to expand the application of the restrictive covenant to cover an action not plainly prohibited by the covenant, something no Alabama court has done in any reported case this court could find. We do not agree with the Smiths that Frander Frander, supra, mandates such a result.
Accordingly, because we conclude that the restrictive covenant referenced in the Ledbetters' deed regarding the orientation of any residence placed on their lot is ambiguous, and in light of the prevalent rule that restrictive covenants may be enforced only if they are clear and unambiguous, we must hold that the Ledbetters have not violated the restrictive covenant. We affirm the judgment of the trial court.
AFFIRMED.
CRAWLEY, P.J., concurs.
PITTMAN and BRYAN, JJ., concur in the result, without writing.
MURDOCK, J., dissents, without writing.