984 So.2d 439 (2007)
Danny L. TRAWEEK
v.
John K. LINCOLN, Jr., and G. Daniel Kearley.
2060552.
Court of Civil Appeals of Alabama.
October 26, 2007.
*440 Charles E. Robinson, Jr., and Renay Bertella of The Robinson Law Firm, P.C., Ashville, for appellant.
Alan C. Fuss of Church, Minor, Abbott, Furr & Davis, P.C., Pell City, for appellees.
BRYAN, Judge.
The defendant, Danny L. Traweek, appeals from a judgment entered in favor of the plaintiffs, John K. Lincoln, Jr., and G. Daniel Kearley, in their action to enforce the restrictive covenants that encumber the lots in Funderburg Cove Subdivision ("the subdivision") in St. Clair County. We reverse and remand with instructions.
In 1964, the then owners of the land constituting the subdivision created and recorded restrictive covenants that encumbered the lots in the subdivision. In pertinent part, the restrictive covenants provide:
"[T]he owners and developers of all the property known as the Funderburg Cove Subdivision . . . being desirous of attaching to the subdivision certain restrictions, make[], adopt[], and publish[] this as restrictions and [these restrictions] shall pertain to all of said lots in said Funderburg Cove Subdivision, *441 with the exception of Lots 1 and 2, Lots 20, 21 and 22 and Lots 26 through 38, both inclusive, as hereinafter explained.
"1. No dwelling costing less than Five Thousand and no/100 ($5,000.00) Dollars shall be constructed on any of the lots of said Funderburg Cove Subdivision as covered by these restrictions. The ground floor area of the main structure, exclusive of open porches and garages, shall not be less than one thousand (1,000) square feet in the case of one story structures, and not less than eight hundred fifty (850) square feet in the case of one and a half or two story structures.
"2. All lots upon which residences may be built, shall be equipped with septic tanks of proper size and location and with sufficient disposal fields to meet the requirements of the County and State Health authorities.
"3. Any house constructed on this subdivision shall be covered with a roof of composition or other like resistant materials.
"4. All lots covered by these restrictions in this subdivision shall be known and described as residential lots with the exception as hereinbefore mentioned. No structure shall he erected, altered, placed, or permitted to remain on any residential building lot other than one single family dwelling, not to exceed two stories in height and appropriate out-buildings. No buildings covered by these restrictions shall be used for any business purpose, but only for residential purposes.
". . . .
"6. Lots 1 and 2, lots 20, 21, and 22 and lots 26 through 38, both inclusive, may be used as business or residential lots. If used as residential lots, they shall be subject to the same restrictions as other residential lots."
Lincoln and Kearley each own one lot in the subdivision, and Traweek owns three lots, although only one of those three lots, lot 21, is involved in this action. In addition, Traweek operates a trailer park on a five-acre parcel of land across the street from the subdivision. Sometime before June 17, 2005, Traweek placed a mobile home on lot 21. The mobile home had a living space of 1,280 square feet and was covered by a composite roof.
On June 17, 2005, Lincoln and Kearley sued Traweek, seeking a judgment declaring that Traweek had violated the restrictive covenants by placing the mobile home on lot 21 and an injunction enjoining Traweek from violating the restrictive covenants. In response, Traweek asserted that the restrictive covenants did not prohibit him from placing a mobile home on lot 21 because, he said, (1) he was using lot 21 for a business purpose, i.e., the expansion of his trailer park, and, therefore, lot 21 was not subject to the restrictions applicable to residential lots and (2) the language of the restrictive covenants did not prohibit mobile homes from being placed on residential lots.
Following a bench trial at which it received evidence ore tenus, the trial court entered a judgment stating, in pertinent part:
"The Court having taken testimony ore tenus finds as follows:
"1. This is a case involving use of lots within the Funderburg Cove Subdivision. . . .
"2. That the lands lying within the Funderburg Cove Subdivision are subject to certain covenants and restrictions. . . .
"3. That [Traweek] is the owner of Lot 21 in Funderburg Cove Subdivision.
"4. That [Traweek] has placed or caused to be placed a mobile home upon *442 Lot 21, and [Lincoln and Kearney] aver that the placement of said mobile home on Lot 21 of Funderburg Cove Subdivision violates the restrictive covenants of the subdivision.
"5. That the restrictive covenants [in] question were drafted in 1964 and the bulk of the developers or owners of Funderburg Cove Subdivision are now deceased. However, one, James T. Funderburg, testified and stated that it was his intent to allow some of the lots to be used for business and some for residential purposes, those restrict[ed] [to] residential purposes were to [have] homes built on the lots. It was not his intent to allow mobile homes on the residential property[,] [a]lthough there is no restriction within the covenants prohibiting mobile homes in that exact language.
"6. However, paragraph one of the subdivision regulations states in part `no dwelling . . . shall be constructed.' Paragraph two states `all lots upon which residence may be built.' Paragraph three [states] `any lot constructed.' Paragraph four [states] `no structure shall be erected.'
"7. It would there[fore] appear to the Court that it was the intent of the developers and owners of Funderburg Cove Subdivision to restrict the residential lots to homes of a certain size, constructed or built on said lots.
"8. It is the opinion of the Court that the Subdivision restrictions of Funderburg Cove Subdivision prohibit the placement of a mobile home on any lot within the subdivision for any purpose whatsoever.
"It is therefore ORDERED, ADJUDGED AND DECREED that the defendant, Danny L. Traweek, has violated the restrictive covenants of the Funderburg Cove Subdivision and that the violation be abated. That [Traweek] is to remove said mobile home from the lot in question within ninety (90) days from the date hereof and is permanently enjoined and prohibited from placing a mobile home on any lot in the Funderburg Cove Subdivision."
Traweek timely moved the trial court to alter, amend, or vacate the judgment; the trial court denied the motion. Traweek then timely appealed to the supreme court and moved the trial court to stay the judgment pending the resolution of his appeal. The trial court stayed the judgment and ordered the parties to maintain the status quo pending the resolution of the appeal. The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
"`When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). . . . However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court's judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). "Questions of law are not subject to the ore tenus standard of review." Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, *443 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 ("[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.").'"
Farmers Ins. Co. v. Price-Williams Assocs., Inc., 873 So.2d 252, 254-55 (Ala.Civ. App.2003) (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App. 2002)).
On appeal, Traweek argues, among other things, that the trial court erred in concluding that the restrictive covenants prohibited Traweek from placing a mobile home on lot 21 in the absence of language in the written restrictive covenants clearly and unambiguously expressing an intent on the part of the persons who created the covenants to prohibit the placement of a mobile home on lot 21. Lincoln and Kearney argue that we should not consider that argument because, they say, Traweek did not present it to the trial court. This court does not consider arguments that were not presented to the trial court, Crutcher v. Wendy's of North Alabama, Inc., 857 So.2d 82, 97 (Ala.2003); however, our review of the record indicates that Traweek did present this argument to the trial court. The trial brief Traweek filed in the trial court states, in pertinent part:
"SUMMARY OF THE LAW
"`Restrictive covenants are not favored in the law and will therefore be strictly construed by [the] Court. All doubts must be resolved against the restriction and in favor of free and unrestricted use of the property.' Lange v. Scofield, 567 So.2d 1299, 1301 (Ala.1990). `Only if the intent of the covenant is clear and unambiguous will it be given effect.' Johnson v. Bryant, 350 So.2d 433, 437 (Ala.1977).
". . . .
"ISSUE AT TRIAL
"Since [the] restrictive covenants are silent [as] to house trailers and/or mobile homes [,] [t]he question before the Court that must be answered is:
"Was it the intention of the developers to limit this subdivision to stick built homes only?
"ARGUMENT
"NO is the answer to the above question. In determining the answer to this question, your Honor must always consider and keep in his mind the holding in Johnson v. Bryant, 350 So.2d 433, 437 (Ala.1977), which states: `Only if the intent of the covenant is clear and unambiguous will it be given effect.'"
(Emphasis added.)
Accordingly, we will consider Traweek's argument that the trial court erred in concluding that the restrictive covenants prohibited Traweek from placing a mobile home on lot 21 in the absence of language in the restrictive covenants clearly and unambiguously expressing an intent on the part of the creators of the restrictive covenants to prohibit the placement of a mobile home on lot 21. In Smith v. Ledbetter, 961 So.2d 141 (Ala. Civ.App.2006), a plurality opinion of this court in which two judges concurred, two judges concurred in the result, and one judge dissented, this court stated:
"This court has stated, `"[o]nly if the intent of the covenant is clear and unambiguous will it be given effect."' Greystone Ridge Homeowners' Ass'n, Inc. v. Shelton, 723 So.2d 88, 89 (Ala.Civ.App. 1998) (quoting Johnson v. Bryant, 350 So.2d 433, 437 (Ala.1977)). Further, *444 `[w]here the language is ambiguous, "its construction will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against [the party seeking enforcement]."' Id. at 90 (quoting Bear v. Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 484 (1948)). See also Smith v. Hines, 429 So.2d 1016 (Ala. 1983); and Schmidt v. Ladner Constr. Co., 370 So.2d 970 (Ala. 1979) (plurality opinion).
"In Smith v. Hines, supra, various property owners sued a homeowner, Hines, alleging that Hines had violated a restrictive covenant that stated that `"[n]o building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling of not less than 1,100 square feet and a private garage for not more than two cars."' Smith v. Hines, 429 So.2d at 1016. Hines built a house without a garage, which the other homeowners claimed violated the restrictive covenant. The trial court held that Hines had not violated the restrictive covenant, and the supreme court affirmed. The supreme court found that the restrictive covenant was ambiguous as to whether a garage must be built with a house or whether a garage if built simply must be built for no more than two cars. Id. at 1017. The supreme court held that, because the restrictive covenant did `not, in clear, unambiguous terms, mandate that each house constructed . . . include a garage. . . ., garages are optional.' Smith v. Hines, 429 So.2d at 1017.
"Similarly, this court has held that when a restrictive covenant was `subject to interpretation,' such a restrictive covenant could not be enforced against a property owner. Roegner v. Vinson, 723 So.2d 694, 696 (Ala.Civ.App.1998). In Roegner v. Vinson, supra, the property owner, Roegner, moved a recreational vehicle ('RV') and a bathhouse onto a lot he had purchased in order to oversee renovation of a cabin on the lot. Neighboring landowners sued Roegner, claiming that he had violated various restrictive covenants contained in his deed. Among other things, those restrictive covenants stated: "`No outside toilets or privies shall be constructed or maintained on any lot in the property'" and "`No tents, trailers, mobile homes or temporary type structures of any kind may be erected or placed on any lot, whether temporarily or permanently.'" Id. at 695. The trial court held that Roegner had violated both restrictive covenants and that his RV and bathhouse should both be permanently removed from the lot.
"This court reversed, however. Although this court noted that Roegner's use of the RV as a temporary dwelling violated the restriction against temporary structures, the court found error with the trial court's order to remove the RV from the property completely. This court noted that both restrictive covenants were `subject to interpretation' and that, regarding the RV, there is `a difference between erecting and/or placing an RV on a lot for dwelling purposes and in merely parking an RV on a lot.' Id. at 696. In holding that parking an RV on the lot was not prohibited by the restrictive covenants, this court noted that, `if the grantor had intended to prohibit the parking of RVs . . . on the lot, it would have been easy for the grantor to word the restriction in clear and unambiguous language.' Id. See also Greystone Ridge Homeowners' Ass'n, Inc. v. Shelton, 723 So.2d at 89-90 (holding that a restrictive covenant prohibiting modification of `"the exterior of any Buildings or the landscaping, grounds or other Improvements . . . unless *445 such . . . alteration is first approved, in writing, by Developer"' was `too ambiguous, as well as too broad, for this court to hold' that a landowner could not install a weather vane without prior approval from the developer); and Schmidt v. Ladner Constr. Co., 370 So.2d at 973 (plurality opinion) (stating that provisions in restrictive covenants allowing for modification of such covenants were ambiguous and, therefore, could not be enforced).
"Therefore, because the restrictive covenant referenced in the Ledbetters' deed is ambiguous, it must be interpreted against those seeking enforcement of it and in favor of the Ledbetters. The Smiths claim that, if the language of the restrictive covenant is ambiguous, the intent of the developer, Becker, and the engineer, Tucker, that any house built on lot 24 should face Audrey Lane is controlling. In support of this proposition, the Smiths cite, among other cases, Frander & Frander, Inc. v. Griffen, 457 So.2d 375, 378 (Ala.1984).
"In Frander & Frander, Inc. v. Griffen, supra, the supreme court reversed a trial court's judgment finding that property owners, the Days, had violated, by putting a premanufactured house on their lot, a restrictive covenant in their deed that stated: `"No structure of a temporary character, trailer, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently."' Frander & Frander, Inc. v. Griffen, 457 So.2d at 376. Although the supreme court did not actually find the restrictive covenant to be ambiguous, the court stated that `[w]here the language of the covenants is found to be ambiguous, the intent of the developer is to be given great weight by the court in discerning whether the home should be allowed to remain. . . .' Frander & Frander, Inc. v. Griffen, 457 So.2d at 378. The supreme court then examined the testimony of Kenneth Funderburk, the developer of the Days' subdivision and the drafter of the restrictive covenant. Funderburk had testified at trial that he drafted the covenant with premanufactured houses like the Days' `in mind' and that he had actually seen the Days' house and did not think it violated the restrictive covenant. Id. at 378. Based on this and other evidence, the supreme court held that the Days had not violated the restrictive covenant. Frander & Frander, Inc. v. Griffen, 457 So.2d at 378.
"Additionally, in Cooper v. Powell, 659 So.2d 93 (Ala.1995), the supreme court reversed a trial court's judgment that found that a landowner, by placing two mobile homes on his lot, had violated a restrictive covenant that stated: `"[T]he lots or parcels initially subdivided and sold may not be further subdivided into smaller lots or parcels."' Cooper v. Powell, 659 So.2d at 94. Another provision of the covenant stated: `"Mobile homes shall be allowed on lots or parcels only in the half of the property of greatest distance from the property's primary road frontage."' Id. The supreme court found that the second provision, which uses the plural `mobile homes,' indicated that multiple mobile homes were permissible on the lots. The court also cited language from Frander & Frander, Inc. v. Griffen, supra, providing that `"[w]here the language of the covenant is found to be ambiguous, the intent of the developer is to be given great weight by the court. . . ."' Id. at 95 (quoting Frander & Frander, Inc. v. Griffen, 457 So.2d at 378). The court then noted:
"`Brian Nelson, the developer and author of the restrictions, testified that his intent in drafting the subdivision *446 restriction was to restrict further subdivision and resale of the lots and not to restrict the use of a lot to one single-family dwelling. Further testimony by Nelson revealed, as to another lot he had sold in the general area, subject to substantially the same restrictions, two families were living on the lot in separate dwellings.'
"Id. On the basis of this testimony and other evidence presented in the case, the supreme court held that Cooper, the landowner, had not violated the restrictive covenant and reversed the trial court's judgment. Id.

"In both Frander & Frander, Inc. v. Griffen, supra, and Cooper v. Powell, supra, the supreme court used the developer's testimony to support its decision to limit application of the restrictive covenants in favor of the landowner. See Frander & Frander, Inc. v. Griffen, 457 So.2d at 378; Cooper v. Powell, 659 So.2d at 95. Use of such evidence to limit application of a restrictive covenant comports with the traditional rule applied in such cases that ambiguous restrictive covenants should be construed in favor of the landowner. Indeed, both Frander & Frander and Cooper cite some form of this traditional rule. In Frander & Frander, supra, the supreme court states that `"in construing restrictive covenants, all doubts must be resolved against the restriction. . . ."' Frander & Frander, Inc. v. Griffen, 457 So.2d at 377 (quoting Hines v. Heisler, 439 So.2d [4] at 5 [(Ala.1983)]). Also, in Cooper v. Powell, the court states that `[w]here the language in a restrictive covenant is clear and unambiguous, it will be given its manifest meaning, but its construction will not be extended by implication to include anything not plainly prohibited.' Cooper v. Powell, 659 So.2d at 95. The Smiths, however, are asking this court to use Becker's and Tucker's affidavits to expand the application of the restrictive covenant to cover an action not plainly prohibited by the covenant, something no Alabama court has done in any reported case this court could find. We do not agree with the Smiths that Frander & Frander, supra, mandates such a result.
"Accordingly, because we conclude that the restrictive covenant referenced in the Ledbetters' deed regarding the orientation of any residence placed on their lot is ambiguous, and in light of the prevalent rule that restrictive covenants may be enforced only if they are clear and unambiguous, we must hold that the Ledbetters have not violated the restrictive covenant. . . . "
961 So.2d at 146-48.
In the case now before us, the language of the restrictive covenants did not expressly prohibit the placement of mobile homes on residential lots in the subdivision. Nonetheless, the trial court construed the restrictive covenants to prohibit the placement of mobile homes on residential lots on the basis of (1) the implications of the references to structures being "constructed," "built," and "erected" on residential lots in the restrictive covenants and (2) James T. Funderburg's testimony that he did not intend to allow mobile homes to be placed on residential lots in the subdivision. However, the restrictive covenants also refer to structures being "placed" on residential lots, which implies that mobile homes are allowed on residential lots in the subdivision. Consequently, the restrictive covenants are ambiguous regarding whether they allow mobile homes on residential lots in the subdivision. Therefore, in construing the restrictive covenants to prohibit the placement of mobile homes on residential lots in the subdivision when they do not clearly and unambiguously *447 prohibit it, the trial court violated the rules (1) that "`"[o]nly if the intent of the covenant is clear and unambiguous will it be given effect,"'" Smith v. Ledbetter, 961 So.2d at 146 (quoting Greystone Ridge Homeowners' Ass'n, Inc. v. Shelton, 723 So.2d 88, 89 (Ala.Civ.App.1998), in turn quoting Johnson v. Bryant, 350 So.2d 433, 437 (Ala.1977)), and (2) that "`[w]here the language [in a restrictive covenant] is ambiguous, "its construction will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against [the party seeking enforcement],"'" Smith v. Ledbetter, 961 So.2d at 146 (quoting Greystone Ridge Homeowners' Ass'n, Inc. v. Shelton, 723 So.2d at 90, in turn quoting Bear v. Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 484 (1948)). Accordingly, we reverse the judgment of the trial court and remand the case with instructions to the trial court to enter a judgment in favor of Traweek.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMAS and MOORE, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, with writing.
THOMPSON, Presiding Judge, dissenting.
I respectfully dissent from the main opinion. After receiving ore tenus evidence, the trial court concluded that the restrictive covenants prohibited the placement of a mobile home on any residential lot.
"`Because the trial court heard ore tenus evidence, the trial court's findings of fact are given a presumption of correctness, and we will not reverse the trial court's judgment based on those findings of fact "unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of evidence." Odom v. Hull, 658 So.2d 442, 444 (Ala.1995).'"
Hipsh v. Graham Creek Estates Owners Ass'n, Inc., 927 So.2d 846, 848 (Ala.Civ. App.2005). I believe that the evidence supports the conclusion reached by the trial court.