32 So.2d 765

**WEAVER et al. v. POOL.**

5 Div. 443.

Supreme Court of Alabama.

Nov. 28, 1947.

D. T. Ware and Paul J. Hooton, both of Roanoke, for appellee.

E. B. Parker, of Roanoke, for appellants.

GARDNER, Chief Justice.

The appeal is from the decree overruling demurrer to the bill of complaint.

Complainant, seventy-nine years of age, whose wife is dead and who is without children, is the owner and in possession of 260 acres of land situated in Randolph county, which is particularly described in the bill. One Lela Joy Ownes when a small child, a niece of complainant's wife, was taken into their home. Though never legally adopted she was treated, however, as complainant's own child until she married some twelve or fifteen years ago to one Frazier Weaver, leaving the home of complainant, except for one or two periods of time when she and her husband returned. During the last War Lela Joy and her husband, Frazier Weaver, lived in Roanoke, Alabama, where the husband was employed in a bottling company plant. About the first of March, 1943, these two defendants informed complainant that the husband could secure deferment from Army service if he could assume the operation of a farm and become an essential farmer, and asked permission of complainant to move upon his farm. Complainant had all the equipment for farming purposes which met the requirements of the War Department for deferring essential farmers from draft into the Army. Complainant agreed that they could move onto his farm. In this manner Weaver would obtain a deferment from

Army service. The bill alleges that he did this because of his great love for Lela Joy, whom he had reared from infancy. It is further averred that after complainant had so agreed for the defendants to move on his farm and to have the use of his equipment, defendants proposed to complainant that if he would make a will devising to Lela Joy this farm they would take care of and maintain him during the remainder of his life; that Lela Joy agreed to cook for him, tend to his clothes and in every way give him tender care and treatment. It is then alleged that complainant was an old man, no one to live with or care for him, and he agreed to execute a will to Lela Joy. In another paragraph the bill alleges that defendant Frazier Weaver took him to the latter's attorney for the purpose of having the will written, and that a will was prepared and signed. It is averred in this paragraph that this was done with the understanding and on the condition the defendants would care for him and maintain him during the remainder of his life. Other averments of the bill are to the effect that the defendants did not carry out this agreement to care for him but neglected his wants and made life unbearable for him; the situation being so unbearable that complainant in the year 1946 told the defendants they would have to move out.

It is further averred that in August, 1946, he learned that a deed was on record in the probate office of Randolph county which was supposed to have been signed by complainant, by the terms of which complainant conveyed to Lela Joy Weaver his entire farm of 260 acres, reserving to himself only a life estate; that he knew of no such deed until August, 1946, as he had never heard a deed mentioned. The bill further avers that complainant has defective hearing and is unable to understand a man talking in an ordinary conversation; that the defendant Frazier Weaver, acting for his wife, told complainant that the paper he signed was a will, that he did not read the will but relied on what Frazier Weaver told him, and signed it; that if his signature appears on a deed it was obtained by fraud and misrepresentation on the part of Frazier Weaver, and that complainant did not intend to sign any deed.

In paragraph 10 it is averred that if there is such a deed he seeks its cancellation as provided by law.

Paragraph 11 avers that complainant does not have the custody of the will or deed and cannot attach a copy of either to the bill but defendants should be ordered by the court to produce the will or deed, if any such instrument exists.

The prayer of the bill is for a cancellation of the deed and also for cancellation of the will, if it is ascertained that it is a will, with a general prayer for relief.

■ The demurrer is addressed to the bill as a whole and if it has equity in any of its aspects the demurrer is due to be overruled. Wells v. Wells, post, p. 649, 32 So.2d 697.

■ We may observe that it would have been better pleading to have attached to the bill as exhibit a copy of the deed which is alleged to be on record in the probate office of Randolph county. The authorities hold, as stated in 30 C.J.S., Equity, § 202, the proper practice is to state the substance of the instrument relied on and to attach it, or a copy, to the pleading. Our authorities, however, are not so strict in this requirement as to a copy of the instrument provided the substance is stated in the pleading. Such is the statement of the rule in Roney v. Dothan Produce Co., 217 Ala. 475, 117 So. 36, and Eskridge v. Brown, 208 Ala. 210, 94 So. 353. We think the bill meets this requirement. It not only gives the substance, as complainant understands it, of the instrument, but specifically designated the record book and page in the probate office of Randolph county where the instrument may be found.

Counsel for appellants makes mention in brief of the assignments of demurrer, taking the point that the bill fails to name the attorney that prepared the alleged will, or name the witnesses. We are of the opinion, however, that the bill sufficiently gives the substance of the instrument of which complainant here complains, all of which is open to the defendants on the record of the probate office of Randolph county, and that the omission of these details does not render the bill subject to the demurrer interposed.

■ As to the merits, counsel for complainant appear to rely solely upon the statute. Title 20, § 15, Code 1940, giving the right to rescind a conveyance of realty, consideration for which is the agreement to support the grantor during his life. If the instrument executed by the complainant is a deed the averments of the bill in this respect are sufficient to bring the case within the influence of the statute.

■ We may add, also, that the averments suffice to sustain the bill, regardless of the statute, upon the theory the instrument was executed by reason of fraud and misrepresentation exerted by defendant Frazier Weaver, in representing to the complainant that he was executing a will when in fact it was a deed. Of course, there is no necessity for an allegation of fraud to bring the case within the influence of the statute, but if complainant so desires he could plead in the alternative facts which would support a cancellation of the deed on the ground of fraud, as we have indicated. These observations were recently made in Massey v. Massey, 246 Ala. 396, 20 So.2d 790.

■ But the statute has no application to the cancellation of a will. It applies only to a conveyance of realty; a will is ambulatory, revokable at any time. It may be revoked at any time by several different methods as provided by our statute. Title 61, § 26, Code 1940. Of course, it must be now known to the complainant, or his counsel, what the instrument is, and we think it clear enough from the averments of this bill that the question of a will only arises upon the matter of misrepresentation. The instrument complainant signed is on record in the probate office of Randolph county. There is, of course, no provision in law for the recordation of an unprobated will. No doubt counsel will conclude upon due consideration there exists no necessity for any prayer for relief as to a will.

The demurrer being addressed to the bill as a whole, and there being equity in the bill as to cancellation of the recorded deed, it, therefore, becomes unnecessary, and we think under the circumstances entirely appropriate, that we not enter into discussion of the question as to whether or not the bill would have an independent equity to require the delivery up of a will under the rules stated in 30 C.J.S., Equity, § 29, and authorities therein noted. That question, therefore, we leave to one side, as we are fully persuaded there is now no necessity for its consideration.

Counsel for defendants places the greater stress upon those assignments of demurrer which questions the equity of the bill upon the ground that the averments disclose complainant has committed a wrong for which relief will be denied upon the theory of the equitable maxim that "he who comes into equity must come with clean hands." This contention is based upon the theory that the bill discloses complainant has violated provisions of the Selective Training and Service Act of 1940, §§ 8, 11, 14(b), 50 U.S.C.A.Appendix, §§ 308, 311, 314(b). And in this connection we are cited to United States v. Keegan, 2 Cir., 141 F.2d 248, a case involving prosecution and conviction of persons belonging to what was known as the "German-American Bund"; the prosecution being based upon conspiracy to evade service in military forces of the United States. We are unable to see that this authority, or the provisions of the statute, are here applicable. The complainant, lonely and seventy-nine years of age, from his affection for the wife of the defendant Frazier Weaver, a girl whom he had raised and treated as his own from childhood, merely permitted her husband to move upon the premises and operate his farm, and thereby engage in essential war work. The husband had not been drafted into the Army though presumably subject to draft. It is quite clear that his preference was for essential war work rather than in the military service. Presumably the Board knew all about him, that he had been working at a bottling plant and later engaged in farming. We are unable to see that this complainant in permitting him to move upon his farm was guilty of an offense under this statute any more than munition employers were guilty in employing those who sought employment in the munition factories. The work of each was essential. Furthermore, the execution of the deed here sought to be cancelled had no connection with the matter of engaging

in essential war work. Accepting the averments of the bill there was no indication that any deed was to be expected.

The "clean hand" principle has been given frequent application as disclosed by the numerous cases found cited in the note to 30 C.J.S., Equity, § 94, beginning on page 477. And in some of our own cases we have dealt extensively with this principle. Harton v. Little, 188 Ala. 640, 65 So. 951; Baird v. Howison, 154 Ala. 359, 45 So. 668; Anders v. Sandlin, 191 Ala. 158, 67 So. 684. The authorities disclose that the maxim refers to willful misconduct rather than merely negligent misconduct and must be morally reprehensible as to known facts. Furthermore, equity will consider the conduct of the adversary, the requirements of public policy and the relation of the misconduct to the subject matter of the suit and to defendant. 30 C.J.S., Equity, § 98. As we have indicated, the question of moving upon the farm from the averments of this bill bore no relation to the execution of any deed.

The maxim also has its limitations, and will not be allowed to work injustice and wrong, nor be applied contrary to the rules of equity jurisprudence. 30 C.J.S., Equity, § 98. This court recognized such limitation in Harris v. Harris, 208 Ala. 20, 93 So. 841, where is found an extensive quotation from the Wisconsin court in Clemens v. Clemens, 28 Wis. 637, 9. Am. Rep. 520, and as appropriate here is that part of the quotation which reads as follows:

"Though guilty of a wrong or transgression of the law in one particular, a party does not become an outlaw, or forfeit his right to legal protection in all others, nor lay himself open to the frauds and machinations of others to be practiced and perpetrated against him with impunity."

So here, the argument of counsel for defendants would deny the complainant relief against a fraud practiced upon him by the defendants though in fact it bore no relation to the original agreement that they should come upon his land. As observed in the Harris case, to deny relief in these circumstances would allow the maxim to work injustice and wrong.

As we previously observed, we are unwilling to hold that complainant has violated any statute in permitting these people to move upon his place. But in any event we are clear to the view that he is not to be denied relief upon any "clean hand" principle as here sought to be invoked.

It results in our opinion the demurrer to the bill was properly overruled, and the decree rendered is due to be affirmed. It is so ordered.

Affirmed.

BROWN, LIVINGSTON, and SIMPSON, JJ., concur.