On Application for Rehearing
DONALDSON, Judge.
This court’s opinion of September 16, 2016, is withdrawn, and the following is substituted therefor.
Andrew Bekken appeals from the judgment of the Shelby Circuit Court (“the trial court”) granting Greystone Residential Association, Inc. (“the association”), and the Greystone Architectural Review Committee (“the committee”) an injunction to enforce residential restrictive covenants. Bekken argues that the restrictive covenants contain ambiguities; that the trial court should have applied the relative-hardship test before issuing the injunction; and that the affirmative defenses of statute of limitations, laches, and unclean hands applied in this case. We determine that Bekken’s arguments fail to establish a ground for reversal. Accordingly, we affirm the judgment.
Facts and Procedural History
In July 2007, Bekken purchased a residence on Greymoor Road (“the property”) in the Greystone subdivision (“the subdivision”) located in Shelby County. The pool area and backyard of the property adjoins the Greystone Founders golf course around which the subdivision was developed. It is undisputed that the property is subject to the provisions of the “Greystone Residential Declaration of Covenants, Conditions, and Restrictions” (“the restrictive covenants”). The restrictive covenants were recorded in the Shelby Probate Court in 1990. The committee acts on behalf of the association in considering proposed plans to alter exterior features of properties in the subdivision and in enforcing compliance with the restrictive covenants. After purchasing the property, Bekken removed a wall enclosing the pool area on the property and made other improvements on the property.
On January 23, 2014, the association and the committee filed a complaint against Bekken in the trial court, alleging that Bekken had removed the wall enclosing the pool area on the property and had materially altered the landscaping on the property without the approval of the committee as required by the restrictive cove *1205 nants. The association and the committee initially sought declaratory relief and monetary damages in addition to injunctive relief and attorney fees. Bekken filed an answer generally denying the allegations in the complaint and asserting, among others, the defenses of laches, statute of limitations, and unclean hands. The claims for declaratory relief and monetary damages were later dismissed by the association and the committee.
On May 14, 2015, the association and the committee filed a motion for a summary judgment, arguing that Bekken had violated the restrictive covenants by removing the wall around the pool area, by expanding the concrete deck around the pool, and by altering the landscaping on the property without the approval of the committee. In materials filed in opposition to the motion, Bekken argued, among other things, that the action was barred by the six-year statute of limitations set out in § 6-2-34, Ala. Code 1975. The motion for a summary judgment was denied.
The trial court conducted a bench trial on October 21, 2015, and November 5, 2015, at which it received ore tenus testimony and documentary exhibits. The evidence established that the 2007 deed conveying the property to Bekken contained the notation that the conveyance was subject to “all matters of public record, including, but not limited to easements, restrictions of record, and other matters which may be viewed by observation.” Below the reference to “restrictions of record,” the deed states: “IN WITNESS WHEREOF, the undersigned have hereunto set our hands and seals on this the 13th day of July, 2007.” (Capitalization in original.) The restrictive covenants provide that all alterations to the exterior of a property located within the subdivision, which includes the property, must be approved by the committee; specifically, § 5,05 of the restrictive covenants provides, in pertinent part:
“5.05 Approval of Plans and Specifications.
“(a) IN ORDER TO PRESERVE THE ARCHITECTURAL AND AESTHETIC APPEARANCE AND THE NATURAL SETTING AND BEAUTY OF THE DEVELOPMENT, TO ESTABLISH AND PRESERVE A HARMONIOUS DESIGN FOR THE DEVELOPMENT AND TO PROTECT AND PROMOTE THE VALUE OF THE PROPERTY, THE LOTS, THE DWELLINGS, THE MULTI-FAMILY AREAS AND ALL IMPROVEMENTS THEREON, NO; IMPROVEMENTS OF ANY NATURE SHALL BE COMMENCED, ERECTED, INSTALLED, PLACED, MOVED ONTO, ALTERED, REPLACED, RELOCATED, PERMITTED TO REMAIN ON OR MAINTAINED ON ANY LOT OR DWELLING BY ANY OWNER OR multifamily’ ASSOCIATION, OTHER . ‘ THAN DEVELOPER, WHICH AFFECT THE EXTERIOR APPEARANCE OF ANY LOT OR DWELLING UNLESS PLANS AND SPECIFICATIONS THEREFOR HAVE BEEN SUBMITTED TO AND APPROVED BY [the committee] IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF SECTION 5.05(b) BELOW. WITHOUT LIMITING THE FOREGOING, THE CONSTRUCTION AND INSTALLATION OF ANY ... DECKS, PATIOS, COURTYARDS, SWIMMING POOLS, ... WALLS, FENCES, ... GARAGES ' OR ANY OTHER OUTBUILDINGS, SHALL NOT BE UNDERTAKEN, NOR SHALL ANY EXTERIOR ADDITION TO OR CHANGE OR ALTERATION BE MADE (INCLUDING, WITHOUT LIMITATION, PAINTING OR STAINING OF ANY *1206 EXTERIOR SURFACE) TO ANY DWELLING OR IMPROVEMENTS, UNLESS THE PLANS AND SPECIFICATIONS FOR THE SAME HAVE BEEN SUBMITTED TO AND APPROVED BY [the committee! IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF SECTION 5.06(b) BELOW.
“(b) [The committee] is hereby authorized and empowered to approve all plans and specifications and the construction of all Dwellings and other Improvements on any part of the Property. Prior to the commencement of any Dwelling or other Improvements on any Lot, Dwelling or Multi-family Area, the Owner thereof shall submit to [the committee] plans and specifications and related data for all such improvements, which shall include the following:
“(i) Two (2) copies of an accurately drawn and dimensioned site development plan indicating the location of any and all Improvements, including, specifically, the Dwelling to be constructed on said Lot, the location of all driveway, walkways, decks, terraces, patios and outbuildings and the relationship of the same to any set-back requirements applicable to the Lot or Dwelling. '
[[Image here]]
“(Hi) Two (2) copies of written specifications and, if requested by [the committee], samples indicating the nature, color, type, shape, height and location of all exterior materials to be used in the. construction of the Dwelling on such Lot or any other Improvements thereto, including, without limitation, the type and color of all brick,, stone, stucco, roofing and other materials to be utilized on the exterior of a Dwelling and the color of paint or stain to be used on all doors, shutters, trim
work, eaves and cornices on the exterior of such Dwelling.

U

“(v) Three (S) copies of a landscaping plan prepared and submitted in accordance with the provisions of Section 5.06 below.
“(vi) Such other plans, specifications ■ or other information or documentation as may be required by the Architectural Standards.
“(c) [The committee] shall, in its sole discretion, determine whether the plans and specifications and other data submitted by any Owner for approval are acceptable. One copy of all plans, specifications and related data so submitted to [the committee] shall be retained in the records of [the committee] and the other copy shall be returned to the Owner or Multi-Family Area Association submitting the same marked ‘approved,’ ‘approved as noted’ or ‘disapproved’. [The committee] shall establish a fee sufficient to cover the expense of reviewing plans and related data and to compensate any consulting architects, landscape architects, designers, engineers, inspectors and/or attorneys retained in order to approve such plans and specifications and to monitor and otherwise enforce the terms hereof. Notwithstanding anything provided herein to the contrary, an Owner may make inferior improvements and alterations within his Dwelling that do not affect exterior appearance and a MultiFamily Association may make interior improvements and alterations within any buildings or structures it maintains or owns that do not affect exterior appearance and,, in each case, without the necessity or requirement that [the committee’s] approval or consent.be obtained.
“(d) [The committee] shall have the right to disapprove any plans and speci *1207 fications upon any ground which is consistent with the objectives , and purposes of this Declaration, including purely aesthetic considerations, any failure to comply with any of the provisions of this Declaration or the Architectural Standards, failure to provide requested information, objection to exterior design, appearance or materials, objection on the ground of incompatibility of any such proposed improvement with the scheme of development proposed for the Development, objection to the location of any proposed Improvements on any such Lot or MultiFamily Area, objection to the landscaping plan for such Lot or Dwelling, objection to the color scheme, finish, proportions, style of architecture, height, bulk or appropriateness of any Improvement or any other matter which, in the sole judgment of [the committee],. would render the proposed Improvement inharmonious with the general plan of development contemplated for the Development. [The committee] shall have the right to approve any submitted plans and specifications with conditions or stipulations by which the Owner of such Lot or Dwelling shall be obligated to comply and must be incorporated into the plans and specifications for such Improvements or Dwelling. Approval of plans and specifications by [the committee] for Improvements to one particular Lot, Dwelling or Multi-Family Area shall not be deemed an approval or otherwise obligate [the committee] to approve similar plans and specifications or any of the features or elements for the Improvements for any other Lot, Dwelling or Multi-Family Area within the Development.
“(e) In the event [the committee] fails to approve in writing any such proposed plans and specifications within forty-five (45) days after such plans and specifications have been submitted, then- the plans and specifications so submitted will be -deemed to have been disapproved.
“(f) Any revisions, modifications or changes in any plans and specifications previously approved by [the committee] must be approved by [the committee] in the same manner specified above.”
(Capitalization in original.) Any landscaping work on a property subject to the restrictive covenants also- must be approved by the committee:
“5.06 Landscaping Approval.
“(a) In order to preserve, to the extent practicable, the natural, landscaping and plant life currently situated on the Property and in order to enhance the aesthetic appearance of - the Property, no landscaping, grading, excavation or fill work of any nature shall be implemented or installed by any Owner or MultiFamily Association, other than Developer, on any Lot, Dwelling or Multi-Family Area unless and' until landscaping plans therefore have been submitted to and approved by [the committee]. The provisions of Section 5.05 above regarding the method that such plan's are-to be submitted to [the committee], the time for approval or disapproval of the same and the method of approving modifications or changes thereto shall be applicable to such landscaping plans.
“(b) In addition to the requirements of Section 5.06(a) above, the landscaping plan for any Lots, Dwellings or MultiFamily Areas adjacent to the Golf Club Property shall also be subject to the terms of.. the Reciprocal Easement Agreement, which require, among other things, a natural, undisturbed buffer of thirty (30) feet adjacent to the Golf Club Property.”
*1208 The alteration of previously approved improvements or landscaping without the approval of the committee is prohibited:
“5.07 Construction Without Approval. If (a) any Improvements are initiated, installed, maintained, altered, replaced or relocated on any Lot, Dwelling or MultiFamily Area without [the committee’s] approval of the plans and specifications for the same or (b) [the committee] shall determine that any approved plans and specifications for any Improvements or the approved landscaping plans for any Lot, Dwelling or MultiFamily Area are not being complied with, then, in either event, the Owner of such Lot, Dwelling or Multi-Family Area shall be deemed to have violated this Declaration and [the committee] shall have the right to exercise any of the rights and remedies set forth in Section 5,13 below.”
Section 6.33(f) of the restrictive covenants requires the committee’s approval regarding the alteration of the vegetation or the construction of a swimming pool within a 50-foot buffer zone surrounding the golf course:[1]
“Notwithstanding anything provided to the contrary in this Section 6.33, (i) a fifty (50) foot natural, undisturbed buffer free from any Improvements of any nature, shall remain and at all times be maintained along all portions of each of the Fifth Sector, Phase I Lots (as defined in the Eighth Amendment to Grey-stone Residential Declaration of Covenants, Conditions and Restrictions dated as of July 16, 1993 and recorded in the Probate Office of Shelby County, Alabama) which abut and are contiguous to the Golf Club Property and (ii) no trees, shrubbery, bushes or other vegetation lying within the aforesaid fifty (50) foot natural, undisturbed buffer area may be cut, pruned, removed or mutilated without the prior written consent of [the committee]. Furthermore, each Owner, by acceptance of a deed to any of the Fifth Sector, Phase I Lots, acknowledges and agrees that [the committee] may require additional landscaping, berming and screening to be placed, replaced and maintained in and along the aforesaid fifty (50) foot natural undisturbed buffer area and that, unless expressly approved in writing by [the committee] and the Club Owner, no fences, walls, berms, mounds, barriers, decks, terraces, patios, tennis courts, swimming pools, outdoor furniture, swingsets, outdoor recreational facilities and equipment and any other devices, equipment, tools, machinery, buildings, structures or appurtenances of any nature shall be placed or permitted to remain in or upon the aforesaid fifty (50) foot natural, undisturbed buffer areas.”
Section 5.13 of the restrictive covenants provides for the following remedies in the event of a breach of the restrictive covenants:
“5.13 Enforcement and Remedies. In the event any of the provisions of this Article V are breached or are not otherwise being complied with in all respects by any Owner or Occupant or the respective family members, guests, invitees, agents, employees or contractors of any Owner or Occupant, then [the committee] and the Association shall each have the right, at their option, to (a) enjoin any further construction on any Lot or Dwelling and require the removal or correction of any work in place which *1209 does not comply with the plans and specifications approved by [the committee] for such Improvements and/or (b) through their designated agents,' employees, representatives and independent contractors, enter upon such Lot or Dwelling and take all action necessary to extinguish such violation or breach. All costs and expenses incurred by [the committee] or the Association in enforcing any of the provisions of this Article V, including, without limitation, attorneys’ fees ... shall be paid by such Owner .... Notwithstanding anything provided herein to the contrary, the rights and remedies of [the committee] and the Association set forth herein shall not be deemed exclusive of any other rights and remedies which [the committee] or the Association may exercise at law or in equity or any of the enforcement rights specified in Sections 6.37, 8.09, 11.01, 11.02 and 11.03 below.”
The testimony at trial showed that in 2000 the previous owner of the property built a swimming pool, a concrete deck around the pool, and a wall enclosing the pool area with the advance approval of the committee in compliance with the restrictive covenants. The deck extended approximately four feet from the edge of the pool to the wall. The wall was 48 inches in height and had a finish matching the exterior walls of the house located on the property. The committee’s approval included a 10-foot variance from the otherwise required 50-foot buffer zone extending from the golf course.
At the time Bekken purchased the property in 2007, the exterior walls of the house were clad with an exterior insulation and finishing system (“EIFS”). Bekken testified that a neighbor informed him that he needed to submit plans for improvements to the committee for approval. Bekken submitted a plan to the committee to replace the EIFS with brick. The committee approved the plan on September 25, 2007. The documentation in the record shows that the plan submitted by Bekken included changes only to the house and not to the pool area or the wall enclosing the pool area.
Bekken testified that, in December 2007, he and his sons removed the wall enclosing the pool area and cut down trees in the area behind where the wall had been. A picture dated January 20, 2008, shows the pool area on the property without the wall that had been constructed by the previous owner. Bekken testified that in the spring of 2008 he extended the concrete deck further from the pool, erected a wrought-iron fence in place of the wall, and graded the dirt in the area behind the area where the wall had existed. Bekken testified that he made those improvements out of concern for the safety of his children, who were jumping off the wall into the pool, and to avoid violating the building code for Shelby County. According to Bekken’s testimony, replacing the exterior of the wall with brick would have extended the wall in the direction of the pool and thereby violated the Shelby County building code requiring a certain distance between the pool and the wall. Bekken testified that he also made landscaping changes in the spring of 2008, including placing sod and replacing the existing shrubbery and plants with different shrubbery in the area behind where the wall had been.
Steve Janney is a member of the committee and is the director of operations for the association. Janney’s responsibilities include ensuring that property owners comply with the restrictive covenants. Bekken testified that, before removing the wall, he and Janney orally agreed on a plan for the removal of the wall and on the landscaping alterations, including the placement of sod in the area behind the *1210 swimming pool. Bekken testified that he submitted a written plan to the committee that described the planned removal of the wall, the installation of a fence, the expansion of the póol -deck, the grading of the-backyard, and the placement of sod. Although Bekken claimed that he had received approval for the-plan from the committee, he was unable to produce -written evidence of such approval. Bekken testified that he had kept the documentation at issue with his business records and that he had lost the documentation when his business began failing in 2008.
Janney testified that he had never approved of the plan Bekken claimed to have submitted and that the committee had no record of the submission or approval of such a plan. Janney testified that his discussions with Bekken in 2007 were related only to the proposed improvements to the exterior of the house and did not include the pool area, the wall, or alterations to Bekken’s backyard.
Janney testified that he met with Bekken on August 16, 2008, at the property after learning of the removal of the wall around the pool area. Bekken testified that Janney never expressed disapproval of the removal of the wall during that meeting. Janney testified to telling Bekken that he needed to restore the wall, that a wrought-iron fence could not be approved for any properties within the buffer zone of the golf course, and that the plants placed by Bekken behind the fence needed to be replaced. Bekken and Janney both testified that they had discussed the placement of. sod. Janney testified that Bekken. showed him a sketch of the landscaping changes and that he told Bekken to submit the landscaping proposal for approval by the committee,. Janney testified that the, landscaping “had nothing to do with the wall.”
Janney testified regarding the committee’s process for reviewing proposed improvement plans, which is outlined in a document titled “Greystone Residential Architectural and. Construction Standards.” That document declares that the committee has the right to enter and inspect. properties “at any time before, during,, and immediately upon completion of any [improvements].” Janney testified that the last step of the review process involves a final inspection of the improvements by him on behalf of the committee. Janney testified that, although he was responsible for those inspections, he. did not inspect the property immediately after the approved plan for replacing the exterior walls of the house was completed.
Bekken and Janney testified regarding a number of letters sent to Bekken on behalf of the association requesting that he replace the wall that had been removed from his property, beginning with a letter dated June 10, 2009, In that letter, Janney stated: “If this work is not completed by August 3, 2009, [the committee] will turn this item over to our attorneys.” Bekken testified that he responded on July 16, 2009, by sending an e-mail that stated, in relevant part:
“We are in receipt of your letter about the back wall and are confused why it was sent and by its content.
“Our plan has been and is to implement what you and I and ray wife agreed to when you came over Monday; August 18th of last year and what should be on the approved plan you mention—to install a plant barrier along the back side of the yard between our yard and the golf course—to provide the year round blockage you requested.
“Our situation is that financially we have not .yet been able to proceed with this course of action but we. will as soon as we can with the intent to be done *1211 before the leaves fall off the trees this fall and the existing natural blockage would be at its minimum.”
In a letter dated November 2, 2009, an attorney who was representing the association at that time demanded that Bekken immediately rebuild the wall on the property in accordance with the previous owner’s plan that had been approved for the construction of the pool. In a letter dated November 17, 2010, another attorney representing the association demanded that Bekken immediately submit to the committee a plan to rebuild the wall. On January 7, 2011, Bekken sent an e-mail to that attorney, stating: “[W]e' 'do not have any funds we can apply to addressing the compliance issue. I am aware of the situation and you have my word that I will do whatever I can whenever I can.” In a letter dated September 30, 2013, Janney requested Bekken’s compliance regarding a number of items, including the reconstruction of the wall. In a letter dated November 18, 2013, counsel for the association again demanded that Bekken provide a plan to the committee for the replacement of the wall. Counsel also stated that appropriate action would be taken to enforce the restrictive covenants, including potential litigation if no action was taken within 21 days of the date of the letter.
At the conclusion of the trial, Bekken made a motion for a judgment pursuant to Rule 52(c), Ala. R. Civ. P. (“If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that -issue .... ”). Bekken contended that the six-year statutory limitations period set out in § 6-2-34 barred the action, that the doctrine of laches barred the action, that the restrictive covenants were ambiguous, that insufficient evidence showed that he had violated the restrictive covenants, and that, regarding the enforcement of the restrictive covenants, the evidence did not support greater hardship for the- association and the committee under the relative-hardship test. The trial court denied the motion.
On December 7, 2015, the trial court entered a judgment in favor of the association and the committee. In the judgment, the trial court found (1) that the restrictive covenants applied to the property; (2) that the wall around the pool área on the property had been removed, the pool deck had been extended, a wrought-iron fence had been installed, the landscaping had been altered, and new sod had been laid; (3) that those improvements had been made without approval from the committee in violation of the restrictive covenants; (4) that the removal of the wall and the installation of the fence without approval were each a separate violation of the restrictive covenants; and (5) that Bekken had had actual notice of the restrictive covenants. The trial court also determined that the six-year statutory limitations period set out in § 6-2-34 did not apply to actions to enforce restrictive covenants and that the doctrine of laches did not bar the action. The trial court further determined that the relative-hardship test generally applicable in injunction cases involving the enforcement of restrictive covenants did not apply because of Bekken’s “unclean hands” and that, instead, the presumption in favor of irreparable harm resulting from the violation of restrictive covenants applied. See Grove Hill Homeowners’ Ass’n, Inc. v. Rice, 90 So.3d 731, 739 (Ala. Civ. App. 2011) (“Grove Hill II”) (“The law presumes irreparable harm from the breach of a restrictive covenant regardless of whether the breach -actually enhances the value of the subject property.”). The trial court *1212 granted injunctive relief and ordered Bekken to submit a plan to the committee for the removal of the wrought-iron fence around the pool area, the construction of a wall enclosing the pool area that is at least 48 inches in height and is finished with brick matching the exterior of the house, and the creation of new landscaping, with sufficient new plants, between the new wall and the golf course. The trial court ordered the committee to review any such plan submitted by Bekken or, if Bekken failed to submit a plan within 14 days, to prepare its own plan for Bekken to follow. The judgment assigned the cost of implementing the plan to Bekken. The judgment further granted the request of the association and the committee for attorney fees, as provided within the restrictive covenants, the amount of which was to be determined at a future hearing.
On January 8, 2015, the association and the committee filed a document with the trial court stating that Bekken had failed to submit to the committee a plan for proposed improvements to the property, as required by the judgment, and that, accordingly, the committee had prepared and approved a plan of its own. That plan included two parts. Regarding the enclosure of the pool area, a wall of 48 inches in height and made of material matching the brick house was to be built 10 feet' from the edge of the pool. Regarding the landscaping, the backyard area between the proposed wall and the rear property line was to contain mulch with pine straw and particular types of trees and shrubbery in specific locations.
On January 19, 2016, Bekken filed a notice of appeal from the December 7, 2015, judgment to the supreme court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975. The association and the committee have filed a motion to dismiss the appeal as having been untimely filed.
Discussion
As a threshold matter, we consider the motion to dismiss the appeal filed by the association and the committee, who argue that Bekken failed to timely appeal from the judgment. The association and the committee assert that the judgment is an interlocutory order granting an injunction. Rule 4(a)(1), Ala. R. App. P., provides, in relevant part:
“Except as otherwise provided herein, in all cases in which an appeal is permitted by law as of right to the supreme court or to a court of appeals, the notice of appeal required by Rule 3[, Ala. R. App. P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure. In appeals from the following orders or judgments, the notice of appeal shall be filed within 14 days (2 weeks) of the date of the entry of the order or judgment appealed from: (A) any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction .... ”
“[T]he 14-day limit prescribed by Rule 4(a)(1)(A), Ala. R. App. P., applies only to interlocutory orders granting an injunction—orders that are not otherwise ap-pealable.” Jefferson Cty. Comm’n v. ECO Pres. Servs., L.L.C., 788 So.2d 121, 125 (Ala. 2000).
“An order that ‘adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties’ and ‘is subject to revision at any time before entry of [a] judgment adjudicating all the claims and *1213 the rights and liabilities of all the parties.’ Lunceford [ v. Monumental Life Ins. Co., 641 So.2d 244,] 246 [(Ala. 1994)] (citing, Rule 54(b), Ala. R. Civ. P., and Hallman v. Marion Corp., 411 So.2d 130 (Ala. 1982)). Such an order is interlocutory unless the trial court certifies the judgment as final pursuant to Rule 54(b). Id,”
Crane v. American Cast Iron Pipe Co., 682 So.2d 1389, 1390 (Ala. Civ. App. 1996). “[A] final judgment is a ‘terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants.’” Dees v. State, 563 So.2d 1059, 1061 (Ala. Civ. App. 1990) (quoting Tidwell v. Tidwell, 496 So.2d 91, 92 (Ala. Civ. App. 1986)). However, “‘[a] decision on the merits’ of the claims asserted by the parties is a ‘ “final decision” ’ even when ‘there remains for adjudication a request for attorney’s fees attributable to the case.’ ” Wolfe v. JPMorgan Chase Bank, N.A., 142 So.3d 697, 698 (Ala. Civ. App. 2013) (quoting Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)); see Blankenship v. Blankenship, 963 So.2d 112, 114 n.2 (Ala. Civ. App. 2007) (“[A]n unadjudicated claim for an attorney’s fee does not affect the finality of a judgment.”).
After having conducted a trial, the trial court entered a judgment adjudicating the claim of the association and the committee on its merits. The trial court fashioned an injunction requiring either that Bekken submit a plan meeting certain conditions for the approval of the committee or, if Bekken failed to do so in 14 days, that the committee formulate the plan. The injunction then required Bekken to implement the plan at his expense. On appeal, the parties dispute only whether granting injunctive relief was warranted and not the trial court's fashioning of that relief. The injunction as ordered in the judgment did not require further action by the trial court, and we interpret the judgment as a final judgment issuing a permanent injunction rather than as an interlocutory order issuing a preliminary injunction. See City of Gadsden v. Boman, 143 So.3d 695, 703 (Ala. 2013) (“A permanent injunction is ‘[a]n injunction granted after a final hearing on the merits,’ Black’s Law Dictionary 855 (9th ed. 2009), whereas a preliminary injunction is ‘[a] temporary injunction issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case.”). The only matter left for the trial court to determine was the amount of attorney fees to award to the association and the committee. That unadjudicated amount did not affect the finality of the judgment. See Wolfe, supra. Bekken therefore appealed from a final judgment. See Suther v. Jefferson Cty. Bd. of Health, 456 So.2d 769, 771 (Ala. 1984) (interpreting injunction as permanent and holding that the parties had 42 days to appeal the order issuing the injunction).
Rule 26(a), Ala. R. App. P., provides, in relevant part:
“In computing any period of time prescribed by these rules, by an order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period extends until the end of the next day that is not a Saturday, Sunday, or legal holiday .... As used in this rule ‘legal holiday’ includes New Year’s Day, Birthday of Martin Luther King, Jr., Presidents’ Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day ap *1214 pointed as a holiday by the governor of the state, by the chief justice, by the legislature, or by the President or the ■Congress of the United States.”
See § 1-1-4, Ala. Code 1975 (providing for the exclusion of the last day from the computation of time required by law if that day is a legal holiday). Rule 4(a), Ala. R. App. P., sets the period in which to file a notice of appeal at 42 days. The 42-day period after the entry of the judgment on December 7, 2015, ended on the birthday of Martin Luther King, Jr., January 18, 2016. See § l-3-8(b)(7), Ala. Code 1975 (“Martin Luther King, Jr.’s birthday—the third Monday in January.”). s Pursuant to Rule 26, Ala. R. App. P., the period for Bekken to appeal extended to the next day. Therefore, Bekken filed a timely notice of appeal on January 19, 2016, and we will consider the merits of his appeal.
Bekken contends that, because the restrictive covenants do not specifically state.that “removal” of an improvement is subject to the committee’s approval, the trial court impermissibly extended the construction of the provisions in the restrictive covenants to include the removal of the wall around the pool area on the property,
“Our Supreme Court has held that
“‘ “in construing ' restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear .... Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and circumstances known to the parties.”
‘“Hines v. Heisler, 439 So.2d 4, 5-6 (Ala. 1983).’"
Grove Hill Homeowners’ Ass’n, Inc. v. Rice, 43 So.3d 609, 614 (Ala. Civ. App. 2010)(quoting Hipsh v. Graham Estates Owners Ass’n, 927 So.2d 846, 848 (Ala. Civ. App. 2005)).
¡Section 5.05(a) of the restrictive covenants provides, in relevant part:
“IN ORDER TO PRESERVE THE ARCHITECTURAL AND AESTHETIC APPEARANCE AND THE NATURAL SETTING AND BEAUTY OF THE DEVELOPMENT, TO ESTABLISH AND PRESERVE A HARMONIOUS DESIGN FOR THE DEVELOPMENT AND TO PROTECT AND PROMOTE THE VALUE OF THE PROPERTY, THE LOTS, THE DWELLINGS, THE MULTI-FAMILY AREAS AND ALL IMPROVEMENTS THEREON, NO IMPROVEMENTS OF ANY NATURE SHALL BE COMMENCED, ERECTED, INSTALLED, PLACED, MOVED ONTO, ALTERED, REPLACED, RELOCATED, PERMITTED TO REMAIN ON OR MAINTAINED ON ANY LOT OR DWELLING BY ANY OWNER OR MULTIFAMILY ASSOCIATION, OTHER THAN ' DEVELOPER, WHICH AFFECT THE EXTERIOR APPEARANCE OF ANY LOT OR DWELLING UNLESS PLANS AND SPECIFICATIONS THERÉFOR HAVE BEEN SUBMITTED TO AND APPROVED BY [the committee].... ”
We determine that § 5.05(a) expresses the intent that actions involving improvements that affect the exterior appearance of properties in the subdivision require approval by the committee. Undoubtedly, allowing the removal of improvements without the committee’s approval would contravene the intent expressed in § 5.05(a). We cannot conclude that Bekk•en’s removal of the pool wall was not sub *1215 ject to the terms of the restrictive covenants.
Moreover, § 5.07 provides that a violation of the restrictive covenants occurs when improvements are altered without the committee’s approval or when the committee determines that a property owner is not complying with an approved plan for improvements. The pool area and the wall were improvements to the property built after the committee’s approval of a plan submitted by the previous owner of the property. The removal of the wall was an alteration to those improvements and was noncompliant with the previously approved plan.
Bekken further contends that ambiguity in the restrictive covenants rendered them unenforceable against him.
“ ‘[W]hen the language of a restrictive covenant is not “of doubtful meaning and ambiguous,” the language of that covenant “is entitled to be given the effect of its plain and manifest meaning.” ’ Maxwell [ v. Boyd], 66 So.3d [257,] 261 [ (Ala. Civ. App. 2010) ] (quoting Laney v. Early, 292 Ala. 227, 231-32, 292 So.2d 103, 107 (1974)). However,
“ ‘ “ ‘[w]here the language [in a restrictive covenant] is ambiguous, “its construction will not be extended by implication' or include anything not plainly prohibited and all doubts and ambiguities must be resolved against [the party seeking enforcement].”’” Smith v. Ledbetter, 961 So.2d [141,] 146 [ (Ala. Civ. App. 2006) ] (quoting Greystone Ridge Homeowners’ Ass’n, Inc. v. Shelton, 723 So.2d [88,] 90 [ (Ala. Civ. App. 1998) ], in turn quoting Bear v. Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 484 (1948)).’
“Traweek v. Lincoln, 984 So.2d 439, 447 (Ala. Civ. App. 2007).
“ ‘ “In written instruments, two types of ambiguities can arise: a patent ambiguity and a latent ambiguity. McCollum v. Atkins, 912 So.2d 1146, 1148 (Ala. Civ. App. 2005). A patent ambiguity results when a document, on its face, contains unclear or. unintelligible language or language that suggests multiple'meanings; Thomas v. Principal Fin. Group, 566 So.2d 735, 739 (Ala. 1990). On the other hand, ‘[a]n ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity , for interpretation or a choice among two or more possible meanings,’ Id.” ’
“Grove Hill Homeowners’ Ass’n v. Rice, 43 So.3d 609, 614 (Ala. Civ. App. 2010) (quoting Smith v. Ledbetter, 961 So.2d 141, 145 (Ala. Civ. App. 2006)). ‘[Wither a latent ambiguity exists is a question of law we review de novo.’ Id. at 615.”
Vestlake Cmtys. Prop. Owners’ Ass’n, Inc. v. Moon, 86 So.3d 359, 365 (Ala. Civ. App. 2011).
Bekken argues that the restrictive covenants are ambiguous regarding the extent of the buffer zone between certain properties in the subdivision and the golf course and that the approval requirements applicable to the developer of the subdivision regarding improvements are subject to interpretation. Bekken’s arguments asserting ambiguity are directed to the requirement of approval for the removal of the wall around the pool area, but' he fails to explain the relevance of the provisions he asserts are ambiguous to the removal of the pool wall. There is no indication' in the record that Bekken was a developer, and the extent of the buffer zone does not appear to impact the approval requirement for the removal of the- pool wall. This argument, therefore, fails to demonstrate a ground for reversal of the judgment.
*1216 Bekken further argues that a latent ambiguity exists in § 5.05(a) regarding improvements that affect the “exterior appearance” of a property. As Bekken points out, the purpose of the prohibition against unapproved improvements in the restrictive covenants is to preserve the appearance and to protect the value of the properties in the subdivision. Bekken interprets the prohibition against unauthorized improvements as directed only to improvements that are readily visible. He asserts that the wall around the pool was not visible from the road adjacent to the property, from other properties in the subdivision, or from the golf course. In contrast, Bekken asserts elsewhere in his principal brief on appeal that “[t]he wall removal was readily visual to any who were concerned enough to look, and especially to the [committee] .... This was not some hidden ‘violation’ .... ”
Moreover, § 5.05(d) of the restrictive covenants distinguishes improvements affecting the exterior appearance of a property from improvements to the interior area of a property. Interior improvements do not require the approval of the committee, whereas exterior improvements do require the committee’s approval. Accordingly, an exterior improvement requiring committee approval is an improvement that is not in the interior of a building on a property. The removal of the wall and the installation of the fence around the pool area indisputably affected the exterior of the property and not the interior of a building. Whether one can see an improvement from elsewhere in the subdivision does not introduce multiple interpretations of “exterior improvement” as that term is used in the restrictive covenants. Bekken’s argument therefore fails to establish a latent ambiguity in the restrictive covenants.
Regarding the trial court’s issuance of an injunction, Bekken contends that the trial court should have applied the relative-hardship test. The relative-hardship test is “an equitable doctrine that generally provides that a restrictive covenant ‘will not be enforced if to do so would harm one landowner without substantially benefiting another landowner.’ ” Grove Hill II, 90 So.3d at 736 (quoting Lange v. Scofield, 567 So.2d 1299, 1302 (Ala. 1990)). The party seeking the invocation of the relative-hardship doctrine, however, must have “clean hands.” Maxwell v. Boyd, 66 So.3d 257, 261 (Ala. Civ. App. 2010).
“A pertinent specific application of the clean-hands doctrine is that a restrictive covenant should be enforced if the defendant had knowledge of it before constructing an improvement contrary to its provisions, even if the harm is disproportionate. Green v. Lawrence, 877 A.2d 1079, 1082 (Me. 2005) (citing 9 Powell on Real Property § 60.10(3)); accord Turner v. Sellers, 878 So.2d 300, 306 (Ala. Civ. App. 2003) (affirming denial of relief from restrictive covenant when the burdened parties ‘knew that there were restrictions on the free use of their lot when they purchased it’). The knowledge sufficient to warrant denial of the relative-hardship defense need not be actual, but may be constructive. Miller v. Associated Gulf Land Corp., 941 So.2d 982, 989 (Ala. Civ. App. 2005) (noting that trial court’s judgment denying relief from covenant was supported by evidence that the owners of the burdened lot had ‘purchased the subject property knowing of the nature of the deed restriction and therefore at least constructively knowing’ of nearby land conditions and property owners’ rights).”
Maxwell, 66 So.3d at 261-62; see Grove Hill II, 90 So.3d at 738-39 (quoting Gladstone v. Gregory, 95 Nev. 474, 480, 596 P.2d 491, 495 (1979)) (“ ‘[W]here one takes land with notice of restrictions, equity and *1217 good conscience will not permit that person to act in violation thereof ....’”). “The application of the clean hands doctrine is a matter within the sound discretion of the trial court.” J & M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala. 1999).
“[T]he proper recording of an instrument in the probate court that relates to an interest in real property, such as the covenant document, constitutes constructive notice ‘to all the world’ of the contents of the instrument.” Maxwell, 66 So.3d at 262 (quoting Haines v. Tonning, 579 So.2d 1308, 1310 (Ala. 1991), citing in turn Ala. Code 1975, § 35-4-90). There is no dispute that the restrictive covenants were recorded in the Shelby Probate Court in 1990. As specified in the 2007 deed, the conveyance of the property to Bekken was subject to “all matters of public record, including, but not limited to easements, restrictions of record, and other matters which may be viewed by observation.” Furthermore, Bekken testified that a neighbor had informed him that he needed committee approval for improvements, and he underwent the process for obtaining approval from the committee for improvements not related to the removal of the wall around the pool area. Therefore, the record contains substantial evidence indicating that Bekken had constructive and actual knowledge of the requirement in the restrictive covenants of obtaining committee approval for improvements.
Bekken argues that the clean-hands doctrine did not apply because, he asserts, he did not knowingly violate the restrictive covenants. He claims that his understanding was that the committee had approved of his removal of the pool wall. In accordance with Maxwell, constructive or actual notice of the restrictive covenants is sufficient to apply the clean-hands doctrine to the enforcement of the restrictive covenants. Bekken provides no legal authority to show that application of the clean-hands doctrine required actual knowledge or subjective intent to violate the restrictive covenants. We therefore consider Bekken’s argument only to determine if he has established that the clean-hands doctrine should not have been applied in light of actions by the association or committee.
Bekken testified to receiving oral and written approval for the removal of the wall, but he was unable to produce any documentation of written approval by the committee. Janney, however, testified that there was no approval of the removal of the pool wall and that there was no record of any approval. In an e-mail sent to Jan-ney on July 9,2009, Bekken claims that, on August 18, 2008, Janney had agreed to a plan that included the plants in the area between his backyard and the golf course. Bekken further asserts that the association acknowledged the approval of the removal of the pool wall in the November 2, 2009, letter, which states, in relevant part:
“[The association] demands that you immediately rebuild the wall in the same location and to the same specifications as originally approved by [the committee], In accordance with Section 5.65(g) of [the restrictive covenants] requiring that construction be commenced within one (1) year of [the committee’s] approval, any alternative plan that may have been approved by [the committee] in August 2008 are no longer approved or valid and must be resubmitted to [the committee] for consideration.”
From the context of the letter, the trial court could have concluded that “any alternative plan” referred to the August 18, 2008, plan alleged in the July 9, 2009, email regarding a plant barrier between the property and the golf course. The trial court received conflicting testimony from Bekken and Janney regarding whether the *1218 removal of the wall was approved on August 18, 2008.
““‘It was within the province of the trial court' to consider the credibility of the witnesses, to draw reasonable inferences from their testimony and from the documentary evidence introduced at trial, and to assign such weight to various aspects of the evidence as it reasonably may have deemed, appropriate.
Davis v. Davis, 108 So.3d 1057, 1062 (Ala. Civ. App. 2012) (quoting Vestlake Cmtys. Prop. Owners’ Ass’n, 86 So.3d at 367, quoting in turn Miller v. Associated Gulf Land Corp., 941 So.2d 982, 990 (Ala. Civ. App. 2005)). From the evidence presented, we determine that the trial court was not compelled to find that Bekken had received oral or written approval from the committee for removing the pool wall, that the association had acknowledged an approved plan to remove the pool wall, or that the association had led Bekken to believe that he had received such approval.
Bekken additionally argues that the association was dilatory in informing him of his violation of the restrictive covenants. Janney testified that he informed Bekken that he had violated the restrictive covenants in August 2008, and, beginning in 2009, letters were sent to Bekken requesting that he restore the pool wall. Moreover, “the law does not place the onus on the enforcer of restrictive covenants to warn violators thereof that they may not be in compliance, particularly in circumstances such as those in the present case, where the restrictive covenants require homeowners to gain preapproval of any improvements,” Grove Hill II, 90 So.3d at 738.
Therefore, Bekken fails to establish that the trial court should not have applied the dean-hands doctrine as a result of any conduct on the part of the association, or the committee. Because Bekken had notice of the restrictive covenants before he violated their requirements, the trial court properly applied the clean-hands doctrine in determining that the relative-hardship test did not apply to prevent the issuance of an injunction.
We next turn to Bekken’s arguments regarding the affirmative defenses of statute of limitations, laches, and unclean hands. See Rule 8(c), Alá. R. Civ. P. (listing íaches and the statute of limitations as affirmative defenses); Lowe v. Lowe, 466 So,2d 969, 970 (Ala. Civ. App.' 1985)(holding that the unclean-hands doctrine is an affirmative defense), “The proponent of an affirmative defense ‘bears the burden of proving the essential elements of his affirmative defenses.’” Ex parte Ramsay, 829 So.2d 146, 152 (Ala. 2002) (quoting Ex parte Blue Cross & Blue Shield of Alabama, 773 So.2d 475, 478 (Ala. 2000), and citing Ely v. Pace, 139 Ala. 293, 298, 35 So. 877, 878 (1904)).
Bekken contends that the claim of the association and the committee was subject to the six-year statute of limi-: tations contained in § 6-2-34. The trial court found that § 6-2-34 is inapplicable to an equitable action to enforce restrictive covenants. We agree that, generally, equitable principles govern the enforcement of restrictive covenants in Alabama. See, e.g., Lange v. Scofield, 567 So.2d at 1302; Am-South Bank, N.A. v. British W. Florida, L.L.C., 988 So.2d 545, 554 (Ala. Civ. App. 2007). There, is, however, a lack of uniformity among the states regarding whether statutes of limitations bar actions such as the one on appeal, as stated in 20 Am. Jur. 2d Covenants, Etc. § 265 (2015):
“Under some authority, an action to enforce restrictive covenants is not subject to a statute of limitations defense, though an applicable statute of limitations may limit the time period for which *1219 monetary damages may be recovered. Other authority holds that actions to enforce restrictive covenants, are controlled by statutes of limitation, including a jurisdiction’s statute of. limitations for-legal or equitable actions on contract.” ...
(Footnotes omitted.) It appears that the question whether statutes of limitations are applicable to actions to enforce restrictive covenants depends to a great extent upon the language used in the statutes of each state and the caselaw of each jurisdiction. In Alabama, however, the legislature has provided that the “various statutes of limitation are to be applicable to all actions seeking the type of relief heretofore granted only by.courts of equity,” Lipscomb v. Tucker, 294 Ala. 246, 258, 314 So,2d 840, 850 (1975). See § 6-2-1, Ala. Code. 1975 (“This chapter shall apply to and govern claims in .all courts, and shall apply whether the claim upon which an action is commenced is based upon a debt or obligation of either legal or equitable nature,”). Accordingly, the equitable nature of an action seeking. enforcement of restrictive covenants does not prohibit the application of any applicable provisions contained in Chapter 2, Title 6, of the Code of Alabama 1975.
“‘A party claiming the benefits of a statute has the burden of establishing a sufficient factual basis to. support invocation of the statute.’ ” Burkes Mech., Inc. v. Ft. James-Pennington, Inc., 908 So.2d 905, 911 (Ala. 2004) (holding that party asserting applicability of statute of limitations failed'to. meet burden of showing entitlement to benefits of statute of limitations) (quoting Wood v. Krenz, 392 N,W.2d 395, 397 (N.D.1986), and citing Geiger & Co. v. Hussey, 63 Ala. 338, 342 (1879)). Specifically, Bekken argues that this ease involves one of the actions described in § 6-2-34(4), (6), or (9):
“The following must be commenced ■within six years:
<< . ....
“(4) Actions founded on promises in writing not under seal;-
[[Image here]]
“(6) Actions for' the use and occupation of land;

((

“(9) Actions upon any simple contract or speciality not specifically enumerated in this section.”
Bekken asserts that § 6-2-34(4) and (9) are applicable to this case because of the contractual nature of restrictive covenants.
“‘A covenant is an agreement or promise of two or more parties that something is' done, will be done, or will not be done. In modern usage, the term covenant generally describes promises relating to real property that are created in conveyances or other instruments.’ ”
Collins v. Rodgers, 938 So.2d 379, 385 n.15 (Ala. 2006) (quoting 9 Powell on Real Property § 60.01 [2] (June.2001)). “Restrictive covenants are agreements-among various landowners regarding the use. and enjoyment of their land Willow Lake Residential Ass’n, Inc. v. Juliano, 80 So.3d 226, 241 (Ala. Civ. App. 2010).
Actions based on - promises or agreements under seal, however, are not subject to § 6-2-34(4) and (9). City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159, 1164 (Ala. 1989) (discussing the holding of Meighan v. Watts Constr. Co., 475 So.2d 829 (Ala. 1985), that § 6-2-34 did not apply to the action based on a contract and .deed of easement under seal); see § 6-2-33(1), Ala. Code 1975 (providing for a 10-year limitations .period for “[a]ctions founded upon any contract or writing under seal”). The promise to abide by the restrictive covenants was created in *1220 the conveyance of the property to Bekken. See Collins, supra. The deed conveying the property to Bekken uses language indicating that the instrument was under seal. See § 35-4-22, Ala. Code 1975 (“All writings which import on their face to be under seal are to be taken as sealed instruments and have the same effect as if the seal of the parties was affixed thereto.”). We conclude that Bekken did not establish that § 6-2-34(4) and (9) apply to the facts of this case.
Regarding actions for the use and occupation of land, § 6-2-34(6) applies to actions brought pursuant to § 35-9-100, Ala. Code 1975, which provides:
“A reasonable satisfaction may be recovered for the use and occupation of land:
“(1) When there has been a demise by deed or by parol, and no specific sum agreed on as rent.
“(2) When the defendant has been • let into possession upon a supposed sale of the lands, which, from the act of the defendant, has not been consummated.
“(3) When the tenant remains on the land by sufferance of the owner. When, after a demise, the tenant, having had 30 days’ previous notice, holds over without the consent of his landlord, he shall pay to such landlord double the value of the customary rent of the property so withheld.
“(4) When the defendant has gone in possession of the land unlawfully. The owner of the land has a lien upon the same property of the defendant, and to the same extent as the landlord has under Section 35-9-30 or Section 35-9-60, which may be enforced by attachment as provided in Section 35-9-61 or Section 35-9-34, as may be applicable.
“(5) When for any reason the defendant is estopped from disputing the title of the plaintiff as to the use of the land occupied. In no case shall a mere claim or assertion of powers, right or title of the defendant to that of the plaintiff be a defense unless the claim of right or title of the defendant is bona fide.”
See I Jesse P. Evans III, Alabama Property Rights and Remedies § 21.3 (5th ed. 2012)(“The statute of limitations of six years set out in Ala. Code § 6-2-34 applies to actions for use and occupation.”). “An action for the use and occupation of land was unknown at the common law; and in Alabama, such an action can be maintained only when it can be fitted into one or more of the classifications provided by [a precursor to § 35-9-100].” North Am. Acceptance Corp. v. Cutts, 46 Ala.App. 522, 528-29, 244 So.2d 802, 808 (Civ. App. 1971) (discussing provisions of Title 31, Section 46, Code of Alabama 1940 (Recomp. 1958)); see 2 Alabama Pattern Jury Instructions-Civil 36.70 (3d ed. 2016) (“An action for use and occupation is where the plaintiff, an owner, landlord, or person rightfully in possession of real property is attempting to recover a reasonable satisfaction for the use and occupation of his land by the defendant.”). Bekken does not assert that the claim against him alleges one of the causes of action provided in § 35-9-100 or any other cause of action recognized by caselaw or statute as pertaining to “the use and occupation of land.” § 6-2-34(6) Furthermore, the claim against Bekken alleges only a wrongful use of the property and not a wrongful occupation of it. We therefore determine that Bekken did not establish that § 6-2-34(6) applies to this case.
Consequently, Bekken did not establish the affirmative defense that the statute-of-limitations provisions he raises, *1221 § 6-2-34(4), (6), or (9), barred the claim against him under the facts of this case.[2] See Burkes Mech., supra; Ex parte Ramsay, supra. Although our holding is contrary to the trial court’s finding that a statutory limitations defense does not apply to this type of case, “we are not limited by the reasoning the trial court applied in reaching its judgment. Instead, we can affirm a trial court’s judgment if it was correct for any valid legal reason.” Rogers v. Penske Truck Leasing Co., L.P., 37 So.3d 780, 789 (Ala. Civ. App. 2009).
Bekken also contends that the doctrine of laches barred the action - against him.
“[Laches] is an equitable doctrine applied by the courts to prevent a party that has delayed asserting a claim to assert that claim after some change in conditions has occurred that would make belated enforcement of the claim unjust. Ex parte Grubbs, 542 So.2d [927,] 929 [ (Ala. 1989) ]. A party asserting laches as a defense is generally required to show that the plaintiff has delayed in asserting a claim, that that delay is inexcusable, and that the delay has caused the party asserting the defense undue prejudice. Id.”
Elliott v. Navistar, Inc., 65 So.3d 379, 386 (Ala. 2010).
“‘[T]he applicability of the doctrine of laches is “dependent upon the particular facts and circumstances” of each case,’ and .., ‘[t]he applicability of the doctrine is “committed to the sound discretion of the trial court.” ’ Horton v. Kimbrell, 819 So.2d 601, 606 (Ala. 2001) (quoting Dear v. Peek, 261 Ala. 137, 141, 73 So.2d 358, 361 (1954), and Wallace v. Hardee’s of Oxford, Inc., 874 F.Supp. 374, 377 (M.D. Ala. 1995)).”
L.B. Whitfield, III Family LLC v. Whitfield, 150 So.3d 171, 180-81 (Ala. 2014).
“ ‘[T]he principal factors in determining whether to apply the doctrine of laches are acquiescence and lapse of time.’” Mills v. Dailey, 38 So.3d 731, 734 (Ala. Civ. App. 2008) (quoting Roden v. Walker, 535 So.2d 130, 132 (Ala. 1988)). Bekken testified that he removed the wall around the pool area in December 2007. Janney testified that, after he learned of the removal of the pool wall, he informed Bekken on August 16, 2008, that the removal of the wall was not approved by the committee. It is undisputed that, beginning in 2009, the association sent a number of letters to Bekken requesting the restoration of the pool wall. In his responses to the letters, Bekken indicated financial difficulty as a reason for not completing the modifications to the property in order to comply with the restrictive covenants. The evidence in the record therefore supports findings that the association and the committee did not acquiesce to Bekken’s removal of the pool wall and that any delay by the association and the committee in filing a complaint was not inexcusable.
Bekken argues that a lapse of time caused him to lose documentation showing that he had received approval from the committee for the removal of the pool wall. We note that, according to Bekken’s testimony, the pertinent passage of time was only from December 2007, when he removed the pool wall, to sometime in 2008, when he claimed to have lost the documentation. Furthermore, the existence of such documentation was disputed. Although Bekken testified to having received written *1222 approval from the committee for the removal of the pool wall; Janney testified that neither- the committee nor the association had approved of the removal of the wall or had any records to that effect. Davis, supra. We determine that the trial court was not compelled by the evidence to find that the alleged documentation existed.
In -addition, whether Bekken had- received approval for the removal of the pool wall was not a stale issue before the trial court. Bekken testified that he had had oral approval for the removal of the pool wall, and he presented other evidence purporting to show that he had received approval from the association or the committee. Janney testified that there had been no oral approval. Because of the evidence presented, the trial court did not have to resort to conjecture or speculation in considering whether the committee had approved of the removal of the wall, • and sufficient evidence supports a finding that the committee had not approved the removal of the pool wall. We conclude that Bekken is unable to establish, that he was prejudiced by any asserted delay of the association or the committee and that the trial court acted within its discretion by not applying the doctrine of laches to the association and the committee’s claim.
Bekken argues that the defense of unclean hands applied to the actions of the association and the committee.
“[0]ne ‘who seek[s] equity must do equity’ and ‘one that comes into equity must come with clean hands.’ Levine v. Levine, 262 Ala. 491, 494, 80 So.2d 235, 237 (1965). The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party’s own wrongful conduct renders the assertion of such legal rights ‘contrary to equity' and good conscience.’ Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978). The application of the clean hands doctrine is a matter within the sound discretion of the trial court. Lowe v. Lowe, 466 So.2d 969 (Ala. Civ. App. 1985).”
J & M Bail Bonding Co. v. Hayes, 748 So.2d at 199. “‘[T]he doctrine of unclean hands cannot be applied in the context of nebulous speculation or vague generalities; but rather it finds expression in specific acts " of willful misconduct ....’” Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 932 (Ala. 2007) (quoting Sterling Oil of Oklahoma, Inc. v. Pack, 291 Ala. 727, 746, 287 So.2d 847, 864 (1973), citing in turn Weaver v. Pool, 249 Ala. 644, 32 So.2d 765 (1947)); see also Weaver v. Pool, 249 Ala. at 648, 32 So.2d at 768 (“the maxim refers to willful misconduct rather than merely negligent misconduct”).
Bekken asserts that the association and the committee were neglectful in failing to discover sooner through observation or inspection that the pool wall had been removed, that the association, was tardy in its communication with Bekken about the removal of the pool wall as a violation of the restrictive covenants, that the association and the committee did not provide Bekken with a drawing of the improvements made in 2000 regarding the pool area in their communications with him regarding the removal of the pool wall, that the association requested that Bekken undertake the expense to restore the pool wall, and that the association threatened Bekken with legal action. None of those actions constitute specific acts of willful misconduct warranting the application of the defense of unclean hands. See Retail Developers of Alabama, LLC, supra; Weaver, supra.
For the foregoing reasons, we affirm the judgment.
*1223 APPLICATION GRANTED; OPINION OF SEPTEMBER 16, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

. The restrictive covenants were amended in 1993 to add the requirements in § 6.33(f), including the 50-foot buffer zone surrounding the golf course for Phase I lots in the Fifth Sector of the subdivision. The deed conveying the property to Bekken indicates that the property is a Phase I lot in the Fifth Sector of the subdivision.

. Because Bekken specifically relies on the statute of limitations contained in § 6-2-34, our discussion concerns only whether Bekken met his burden of proving the application of that statute to the facts of this case. We do not address whether any other provisions of Chapter 2, Title 6, Ala. Code 1975, would apply.